**Earl E. ROBINSON, Plaintiff, Appellee,**

v.

**POCAHONTAS, INC., et al., Defendants, Appellants.**

No. 71–1256.

United States Court of Appeals, First Circuit.

Heard March 8, 1973.

Decided May 4, 1973.

Frank H. Handy, Jr., Boston, Mass., with whom Viola B. Kneeland, Richard B. Kydd, and Kneeland, Splane & Kydd, Boston, Mass., were on brief, for appellants.

Albert P. Zabin, Boston, Mass., with whom Schneider & Reilly, Inc., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is a diversity suit in which plaintiff, Earl E. Robinson, a seaman, seeks recovery from the defendant, Sea Coast IV, Inc., the charterer of the vessel on which he was injured, for negligence under the Jones Act, 46 U.S.C. § 688 (1970), and for unseaworthiness and maintenance and cure under the general maritime law. The jury awarded the plaintiff verdicts of $45,000.00 on the Jones Act and unseaworthiness counts and $21,366.06 on the maintenance and cure claim, of which amount $10,000.00 was designated as punitive damages. On entering judgment the trial court added pre-judgment interest in the amount of $9,589.90, bringing plaintiff's total recovery to $75,955.56. Arguing that the trial court erred in a number of respects in instructing the jury and that it abused its discretion in awarding pre-judgment interest, Sea Coast appeals.

The pertinent background facts are as follows. On April 20, 1967, Robinson, while a crewman on the M/V Arthur J. Minners engaged in fishing operations in the Gulf of Mexico, slipped on some fish slime and fell, injuring his back. After receiving preliminary treatment at a small Mississippi port, Robinson was hospitalized under the care of Dr. Alleman, a company physician, in Abbeville, Louisiana. Following testing, Dr. Alleman informed the Minners' captain that he suspected plaintiff of malingering and also that he had syphilis. The captain then discharged Robinson who departed for his home in Virginia.

When Robinson arrived in Richmond on May 16, 1967, his back condition had become critical and he required immediate medical attention. After receiving this care, he was admitted to the United States Public Health Service Hospital in Baltimore where physical therapy was administered and a myelogram taken. Although this test proved to be negative, indicating no serious back injury, plaintiff's condition showed little improvement. After leaving the hospital on June 15, 1967, he placed himself under the care of a private physician in spite of Sea Coast's order that he receive all treatment through the free Public Health Service Hospital. Thereafter, his condition was diagnosed as a herniated disc and in early 1968 corrective surgery was performed at a private medical facility. While this operation and the post-operative therapy which he received alleviated

his symptoms to some extent, he still did not achieve a full recovery.

In the meantime Sea Coast was demonstrating a marked reluctance to honor its obligation to pay maintenance to the plaintiff. Initially payments were withheld on the pretext that Robinson, having contracted venereal disease, had been fired for cause. When this charge was not substantiated, however, payments were made, but on an irregular basis. In late 1967, in spite of the fact that defendant was informed that Robinson would lose his home if he was not paid his back wages, defendant refused to authorize this expenditure and Robinson's mortgage was foreclosed. Finally, in 1968, when plaintiff refused to accept a settlement offer which was characterized by his counsel as "totally inadequate," all payments were terminated.

In December 1969 Robinson moved from Virginia to Baltimore and again received treatment at the Public Health Service Hospital. When his condition showed no further improvement, he returned to his private doctors and, following another myelogram, a second ruptured disc was discovered. Plaintiff's experts testified that surgical intervention would again be necessary to correct this condition.

■ On this background, Sea Coast first takes issue with the trial court's instruction that the jury might award plaintiff the private medical expenses he incurred if it found that he acted reasonably in seeking aid at facilities other than those of the United States Public Health Service. Specifically, Sea Coast argues that the evidence was insufficient to justify submitting this issue to the jury in view of the general rule that, absent unusual or emergency circumstances, a seaman who is ordered to receive treatment at a public marine hospital may not consult private physicians or incur additional medical expenses and expect to pass on these costs to his employer. Our review of the record, however, convinces us that this instruction was justified.[1] During plaintiff's initial stay in the marine hospital in 1967 a myelogram was taken and was reported to be negative. Thereafter, in spite of the fact that he showed little improvement, plaintiff received no treatment except physical therapy and no further diagnostic tests were made. His experience in 1969 was substantially the same. Again he was placed on a physical therapy program which did little to improve his condition and, since no myelogram was taken, his second ruptured disc was not discovered. Given these facts, it is clear that each time plaintiff entered the marine hospital his condition was incorrectly diagnosed. On this basis it is fair to infer that on both of these occasions the treatment he needed was either not tendered or would not have been forthcoming. *Cf.* Nunes v. Farrell Lines, Inc., 129 F.Supp. 147 (D.Mass.), modified, 227 F.2d 619 (1st Cir. 1955). Under these circumstances, we hold that the trial court's submission of this issue to the jury was clearly appropriate.[2]

---

1. The court instructed the jury as follows:
   "A seaman does not have a free hand in choosing his physician and deciding on his own treatment. The United States Public Health Service maintains marine hospitals at which seamen may receive low cost or free, in some instances, care and treatment. An ill or injured seaman who has been given a hospital ticket, as it is called, by the vessel and provided with transportation to the nearest marine hospital usually must accept the medical services available to him in that hospital. However, if on reasonable grounds a seaman refuses to accept medical treatment at a marine hospital and justifiably, in your view, gets treated by a physician or hospital other than the marine hospital, then he may recover as part of maintenance and cure expenses for medical bills that he actually incurred, . . . ."
   We feel that this instruction accurately reflected the law on this issue.

2. We add that our conclusion that plaintiff is entitled to recover the private medical expenses he incurred in the past should not be read as relieving plaintiff of his duty to comply with defendant's orders in obtaining medical care in the

Sea Coast next argues, in light of the absence of a specific demand for unearned wages in the maintenance and cure count of the complaint, that the trial court erred in instructing the jury that this item could be included in its award on this claim. This argument is not persuasive for at least two reasons. In the first place, at least since The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903), it has been settled that the right to recover wages through the end of the voyage or, as in this case, through the end of the fishing season, *see* Vitco v. Joncich, 130 F.Supp. 945, 949–950 (S.D.Cal.1955), aff'd, 234 F.2d 161 (9th Cir. 1956), is a recognized element of a disabled seaman's claim for maintenance and cure. *See, e. g.*, Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 913–915 (2d Cir. 1960); Manard v. St. Lawrence Carriers, Inc., 266 F.Supp. 500, 501 (D.Del.1967); Vitco v. Joncich, *supra*, 130 F.Supp. at 949 and cases cited; Gilmore and Black, The Law of Admiralty, § 6–12 (1957). In view of the unequivocal acceptance of this rule, although the better practice would be to spell out a claim for unearned wages in the pleadings, a demand for these wages would seem to be implicit in Robinson's complaint. In addition, however, in the instant case Sea Coast never made its position clear that such an award would be beyond the scope of the pleadings until after the court had instructed the jury. During trial no objection was raised to Robinson's testimony concerning his rate of compensation or the fact that these wages had not been paid. Indeed, Sea Coast rigorously cross-examined plaintiff on these issues. Under these circumstances, especially since the complaint could have been amended if this issue had been seasonably raised, Sea Coast may not now challenge the propriety of this award.

Sea Coast's further contention that the trial court's instruction permitting an award of punitive damages was erroneous as a matter of law is also without merit. Support for such an award is found in Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), where the Supreme Court held that a seaman could recover attorneys' fees as damages where a shipowner was callous, willful, or recalcitrant in withholding these payments. Mr. Justice Stewart, dissenting primarily on the question of the extent of a seaman's recovery for maintenance and cure but seemingly in agreement with the majority's fundamental premise, stated:

> "[I]f the shipowner's refusal to pay maintenance stemmed from a wanton and intentional disregard of the legal rights of the seaman, the latter would be entitled to exemplary damages in accord with traditional concepts of the law of damages. McCormick, Damages, § 79. While the amount so awarded would be in the discretion of the fact finder, and would not necessarily be measured by the amount of counsel fees, indirect compensation for such expenditures might thus be made." *Id.* at 540, 82 S.Ct. at 1004.

Such awards or the right thereto have been upheld in the progeny of *Vaughan*. *See, e. g.*, Solet v. M/V Capt. H. V. Dufrene, 303 F.Supp. 980, 989 (E.D.La. 1969); Roberson v. S/S American Builder, 265 F.Supp. 794, 800 (E.D.Va. 1967); Stewart v. S.S. Richmond, 214 F.Supp. 135, 136–137 (E.D.La.1963). The answer to Sea Coast's further argument that the right to maintenance is essentially a contractual right and that generally punitive damages are not awarded for the breach of such rights is also found in *Vaughan, supra* 369 U.S.

---

future. Thus, if defendant directs plaintiff to have future surgery performed at the Public Health Service Hospital, absent a showing that these facilities are in some manner inadequate or unavailable, plaintiff must comply with this request or bear the cost himself. *See* Nunes v. Farrell Lines, Inc., *supra*, at 148.

at 532–533, 82 S.Ct. at 1000–1001, where the Court stated:

> "Maintenance and cure differs from rights normally classified as contractual. As Mr. Justice Cardozo said in Cortes v. Baltimore Insular Line, *supra*, 371 [of 287 U.S. 367, 174 of 53 S.Ct. 173, 77 L.Ed. 368], the duty to provide maintenance and cure 'is imposed by the law itself as one annexed to the employment. . . . Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident.' [Footnote omitted.] "[3]

Finally, defendant's assertion that the evidence was insufficient to warrant charging the jury on punitive damages merits little discussion. In view of the defendant's initial use of the venereal disease charge to justify withholding these payments, its refusal to pay past due unearned wages when notified that plaintiff was in danger of losing his home, and its termination of all payments after plaintiff refused to accept its settlement offer, the appropriateness of this instruction seems clear.[4]

■ Sea Coast's final argument that the trial court erred in adding pre-judgment interest to the verdicts requires, at the outset, resolution of an issue on which the record is silent, namely whether this award was made pursuant to state or federal law. In this regard plaintiff argues, since this is a diversity action, that state law should have been applied and that the application of the "remedial" Massachusetts pre-judgment interest statute, 38 M.G.L.A. c. 231 § 6B, to the case at bar would be an appropriate state-law supplement to federal maritime policy. Sea Coast, on the other hand, contends that the federal admiralty rule, under which an award of pre-judgment interest would rest within the discretion of the trier of facts, *see*, *e. g.*, American Union Transport Co. v. Aguadilla Terminal, Inc., 302 F.2d 394, 395 (1st Cir. 1962); O'Donnell Transportation Co. v. City of New York, 215 F.2d 92, 95 (2d Cir. 1954), should be employed since this suit was brought to enforce rights created by the general maritime law. On this issue it is clear that Sea Coast must prevail. In Moore-McCormack Lines, Inc. v. Amirault, 202 F.2d 893 (1st Cir. 1953), a diversity action in which the issue was whether this same Massachusetts statute should be applied to augment personal injury awards resulting from the collision of two vessels, this court said:

> "But this is not a 'typical diversity case' under which a federal district court sitting in Massachusetts would be obliged to apply the local substantive law of Massachusetts in accordance with Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, and Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. The claims sued on here were not based upon Massachusetts law, but were for maritime torts. It is well settled that by force of the Constitution itself, when a common law action is brought, whether in a state or in a federal court, to enforce a cause of action cognizable in admiralty, the substantive law to be applied is the same as would be applied in an admiralty

---

3. Justice Stewart was of the same view. "The duty to provide maintenance and cure is in no real sense contractual, and a suit for failure to provide maintenance or cure can hardly be equated, therefore, with an action for breach of contract. The duty . . . is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties.' Cortes v. Baltimore Insular Line, 287 U.S. 367, 372 [53 S.Ct. 173,

174, 77 L.Ed. 368]." Vaughan v. Atkinson, *supra*, at 534, 82 S.Ct. at 1001.

4. We need not address Sea Coast's further claim that it may not be held liable for punitive damages because no proof was offered (1) that the agent who represented it in the maintenance negotiations was incompetent, or (2) that it had participated in or ratified his callous acts since these issues were not preserved for appeal.

court—that is, the general maritime law, as developed and declared, in the last analysis, by the Supreme Court of the United States, or as modified from time to time by Act of Congress. Jansson v. Swedish American Line, 1 Cir., 1950, 185 F.2d 212, 216, and cases cited. The fortuitous circumstance that in the present case there was diversity of citizenship between the parties plaintiff and defendant may give an added basis for jurisdiction in the federal district court, under 28 U.S.C. § 1332. But whether such diversity existed or not, it is still true that the substantive law to be applied in determining both liability and the amount of damages to be embodied in the money judgment is federal law, not state law." *Id.* at 896–897.

*See* Canova v. Travelers Insurance Company, 406 F.2d 410 (5th Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 88, 24 L.Ed. 2d 84 (1969); Newburgh Land & Dock Company v. Texas Company, 227 F.2d 732 (2d Cir. 1955). In light of this express authority, we may assume that this pre-judgment interest award was entered pursuant to the federal maritime rule.[5]

 The further question which arises, of course, is whether the trial court abused its discretion in making this award. In this regard we find Newburgh Land & Dock Company v. Texas Company, *supra*, instructive. In that case, a diversity action in which the trial court added pre-judgment interest to a jury verdict for collision damages, the second circuit, in vacating this award, observed: "[i]t is the federal law that in actions at law when the award of interest rests in discretion, it

is the jury who must exercise it. . . ." *Id.* at 735. Given this rule, it is apparent that the trial court's award of pre-judgment interest in the instant case violated the province of the jury and therefore may not stand. In addition, although plaintiff did include demands for interest in his complaint, since he did not request that the jury be instructed that it might, in its discretion, add pre-judgment interest to its award, we conclude that it would be inappropriate to remand this issue to the trial court for further consideration. *See* Newburgh Land & Dock Company v. Texas Company, *supra*, at 735.

The judgment is modified by striking out the award of pre-judgment interest and, as modified, is affirmed.

---

5. Plaintiff's attempt to overcome the import of *Amirault* by suggesting that it was "expressly overruled" in Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959), is not persuasive. While it is true that in *Romero* the Supreme Court overturned the holding of Doucette v. Vincent, 194 F.2d 834 (1st Cir. 1952), that a civil action on a

maritime claim might be maintained on the law side of the federal court, even in the absence of diversity of citizenship, as a claim arising under the Constitution within 28 U.S.C. § 1331 (1970), we do not view the jurisdictional rationale of *Doucette* as having been of seminal importance to the court's choice of law decision in *Amirault*.