57 F.3d 1495
 1995 A.M.C. 2022, 64 USLW 2012
 Christopher Gerald GLYNN, Plaintiff-Appellant-Cross-Appellee,
v.
ROY AL BOAT MANAGEMENT CORP.; Daniel J. Shawhan, in
personam; F/V No Problem, O.N. 650399, her engines,
equipment, appurtenances, catch, in rem; F/V Full Moon, her
engines, equipment, appurtenance, cargo freight and catch,
in rem, Defendants-Appellees-Cross-Appellants.
 Nos. 93-15546, 93-15681.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1994.
Decided June 21, 1995.
 
 Jay Lawrence Friedheim and Joe P. Moss, Friedheim & Moss, Honolulu, HI, for plaintiff-appellant-cross-appellee.
 James E. Ross, James E. Ross & Associates, Houston, TX, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the District of Hawai'i.
 Before: FARRIS, BEEZER, and RYMER, Circuit Judges.
 Opinion By Judge RYMER*; Dissent by Judge RYMER.
 RYMER, Circuit Judge:
 
 
 1
 These appeals require us to decide who can be an "employer" for purposes of a seaman's suit under the Jones Act, 46 U.S.C.App. Sec. 688, the propriety of punitive damages and attorney's fees awarded on a claim for failure to pay maintenance and cure, and whether the issue of prejudgment interest must be submitted to the jury when a maritime claim is tried by a jury.
 
 
 2
 Christopher Glynn brought suit under general maritime law and the Jones Act for injuries allegedly suffered as a crew member on board the F/V NO PROBLEM. The vessel was owned by Roy Al Boat Management Corporation, and mastered by Captain Daniel Shawhan. The district court[1] determined that Roy Al was Glynn's "employer" but left Shawhan's "employer" status for the jury to decide. The jury returned special verdicts against both Roy Al and Shawhan on Glynn's claims for unseaworthiness, negligence, and maintenance. It also awarded punitive damages after finding that Roy Al and Shawhan acted arbitrarily, willfully, and with bad faith in failing to provide maintenance and cure. The district court awarded attorney's fees on the claim for maintenance and cure, but granted judgment notwithstanding the verdict on punitive damages as it believed that punitive damages are unavailable as a matter of law. The court also declined to award prejudgment interest on the ground that it is a question for the jury which Glynn waived by failing to request an instruction. Both parties appeal.
 
 
 3
 We conclude that the court properly determined that Roy Al, as the vessel owner for whom Glynn worked, was Glynn's Jones Act "employer" because the relationship bears no indicia of a joint venture other than the fact that Glynn's wages were determined by a percent of net profits. We also hold that there can be no more than one "employer" for purposes of the Jones Act. Submitting the question of Shawhan's "employer" status to the jury was therefore error, requiring reversal of the judgment against him for negligence.
 
 
 4
 On Glynn's cross-appeal we conclude that the district court properly granted JNOV on punitive damages because they are unavailable on claims for unpaid maintenance and cure. Finally, we hold that when a maritime claim is tried to a jury, the issue of prejudgment interest is for it to decide.
 
 
 5
 As we have jurisdiction under 28 U.S.C. Sec. 1291, we affirm in part and reverse in part.
 
 
 6
 * To recover under the Jones Act,[2] the plaintiff must show that the defendant was his employer at the time of injury. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 787 n. 6, 69 S.Ct. 1317, 1319-20 n. 6, 93 L.Ed. 1692 (1949). Although both parties make a number of arguments, the dispute boils down to whether the district court should have instructed the jury that Glynn was "an employee of Defendant Shawhan or Roy Al Boat Management Company, or both ... [and] that it has already determined that as a matter of law plaintiff was an employee of Defendant Roy Al Boat Management Company." As Roy Al, Shawhan, and F/V NO PROBLEM jointly appeal and point no fingers at one another, we are not concerned here with whether one rather than the other should be Glynn's employer.[3] Rather, all contend that the district court went astray by determining that an employer/employee relationship existed as a matter of law. Roy Al maintains that the jury could have found that Glynn was a joint venturer or independent contractor, not an employee.[4] Shawhan in turn argues that it was erroneous to submit his status to the jury because, having already found that Roy Al was Glynn's employer, the court could not also let the jury find that he too could be a Jones Act employer.[5] Glynn, on the other hand, urges that no reasonable jury could have found that he was a joint venturer or independent contractor, and that he could be employed by Shawhan as well as Roy Al.[6]
 
 
 7
 * We have long held that whether an employer/employee relationship exists is usually a question of fact for the jury, so long as there is an evidentiary basis for its consideration. See, e.g., Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 989 (9th Cir.1987); The Norland (Loe v. Goldstein), 101 F.2d 967, 971-73 (9th Cir.1939). Roy Al contends that the jury could have found that Glynn was a joint venturer based on evidence that Shawhan and the crew were paid percentages out of 100 percent of the net profit, Roy Al managed the joint venture's administrative work and contributed the F/V NO PROBLEM, each crew member's gear was deducted from his share of net profit, Shawhan cut the checks for the crew's share, and Shawhan understood himself to be self-employed.
 
 
 8
 The facts are not in dispute. When Glynn was hired in late January 1992, Shawhan told him that he was captain, that the boat was owned by Roy Al, and "that we all worked for them." Glynn acknowledged in writing that he had signed on as a crew member of the F/V NO PROBLEM, owned by Roy Al and mastered by Shawhan; that his term of employment would begin upon signature of the document and end after Glynn gave two weeks notice; that he agreed to being compensated 8.3 percent of the net profit for each trip; and that "immediate termination of the job will take place" if caught with alcohol, illegal drugs, or narcotics, and that "all pay due will be confiscated by the captain."
 
 
 9
 As master, Shawhan gave all orders on the vessel. He told crew members when to show up for work when they were at dock, and set the schedule when they were fishing. He was not an officer or director of Roy Al, and had no charter agreements with it.
 
 
 10
 Shawhan and Roy Al made the decision to bring the NO PROBLEM to Hawaii. Hawaii Seafood in Honolulu managed the vessel. Bills for fuel, bait, or gear were sent to Hawaii Seafood, which would either cut the checks or forward them to Roy Al for payment; when Shawhan bought supplies himself, he got an advance from Hawaii Seafood after it was authorized by Roy Al. As agreed with Roy Al, Shawhan delivered the fish caught only to Hawaii Seafood.
 
 
 11
 After calculating the net profit for a fishing trip, Roy Al would keep 50 percent and send a check for the other 50 percent to Shawhan. From his share, Shawhan paid the crew members their agreed percentage of the total net profit. Under this arrangement, Shawhan believed himself to be self-employed.
 
 
 12
 Glynn's paycheck from the voyage was a personal check written by Shawhan and his wife. Usually Shawhan would purchase new equipment or rain gear for a new crew member and deduct the cost out of his paycheck. In Glynn's case, however, Shawhan provided Glynn with boots to use on the vessel but agreed to let Glynn keep them without charge. Finally, when Glynn showed up late for work while the NO PROBLEM was in dock, Shawhan fired him.
 
 
 13
 While there is no settled set of criteria for determining whether a Jones Act employment relationship exists, the Supreme Court has indicated that "[o]ne must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?" Cosmopolitan, 337 U.S. at 795, 69 S.Ct. at 1323-24. The Third Circuit similarly focuses on the degree of control exercised over the crew member and looks to factors such as payment, direction, supervision, and source of the power to hire and fire. Matute v. Lloyd Bermuda Lines, Ltd., 931 F.2d 231, 236 (3d Cir.), cert. denied, 502 U.S. 919, 112 S.Ct. 329, 116 L.Ed.2d 270 (1991).
 
 
 14
 Considering these factors, no reasonable jury could have found that Glynn was anything other than an employee. When he signed on, he was told that he and Shawhan worked for Roy Al. Roy Al and Shawhan decided where the vessel would go. Glynn had no control over when, where, or how long the fishing would occur. He had no say in managing, operating, or supervising the boat or its crew. His contract speaks in terms of compensation and his pay could be confiscated if he were found with contraband. The cost of his gear was not deducted from Glynn's share of the profit. He was hired on, could leave or be terminated, and was indeed fired. All of these facts point to an employment relationship; only the fact that Glynn's compensation was a percentage of net profit supports a finding of joint venture, but payment by shares is not inconsistent with the employer/employee relationship.[7] Southern Shell Fish Co. v. Plaisance, 196 F.2d 312, 314 (5th Cir.1952); see Callan v. Cope, 165 F.2d 703 (9th Cir.1948). Under these circumstances, we cannot say the district court erred in holding as a matter of law that Glynn was an employee of Roy Al.
 
 
 15
 The Norland, upon which Roy Al relies, is not to the contrary. In addition to being paid by shares, the crew in that case decided when and where to fish, and when and where to sell the catch. Moreover, the owner of the boat had nothing to do with the purchase of supplies, food, or equipment. The Norland, 101 F.2d at 970. It was also unclear whether there was a demise charter of the vessel. Id. at 971-72. These factors, which are absent in the instant case, presented a jury question whether a joint venture or employment relationship existed.
 
 B
 
 16
 After determining as a matter of law that Roy Al was Glynn's Jones Act employer, the district court left it to the jury to decide whether Shawhan was also an employer. In denying Shawhan's motion for a new trial, the court relied on two Fifth Circuit opinions, Spinks v. Chevron Oil Co., 507 F.2d 216 (5th Cir.1975), clarified, 546 F.2d 675 (1977), and Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir.1980), to conclude that Glynn could have more than one Jones Act employer. We disagree that these decisions control because the Supreme Court indicated in Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949), that there can be only one Jones Act employer, and neither Glynn nor Roy Al has ever argued that Shawhan was Glynn's sole employer.
 
 
 17
 The Court states in Cosmopolitan that "[w]e have no doubt that under the Jones Act only one person, firm, or corporation can be sued as employer." Id. at 791, 69 S.Ct. at 1322. In the face of the plaintiff's argument that he could sue a general agent of the United States as his Jones Act employer, the Court indicated that "[e]ither Cosmopolitan or the Government is that employer." Id. Of the relatively few courts since Cosmopolitan to consider the issue, most have interpreted this language to mean that a plaintiff can hold only one employer liable under the Jones Act. See, e.g., Savard v. Marine Contracting Inc., 471 F.2d 536, 541 (2d Cir.1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2778, 37 L.Ed.2d 404 (1973); Hickman v. Ohio Barge Line, Inc., 376 F.Supp. 1092, 1094 (W.D.Pa.1974); Trexler v. Tug Raven, 290 F.Supp. 429, 451 (E.D.Va.1968), rev'd on other grounds, 419 F.2d 536 (4th Cir.1969), cert. denied, 398 U.S. 938, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).
 
 
 18
 Neither Spinks nor Guidry is to the contrary. Spinks involved a "borrowed servant" arrangement under which the injured seaman's immediate employer (Labor Services) provided his labor aboard a barge owned by another company (Chevron). In that context, the court suggested that "[i]t would seem reasonable ... that a seaman may have more than one Jones Act employer," 507 F.2d at 225, but concluded that it "need not ... pass on the question whether Spinks could sue Chevron and Labor Services under the Jones Act" because "Spinks sued only one employer--Labor Services," id. at 226. Guidry cites Spinks for the proposition that "[i]t ... may be possible for a seaman to have more than one Jones Act employer" in a similar situation. 614 F.2d at 452. In Guidry, however, the court concluded that under the facts of the case, there was no basis for finding that at the time of his injury, the plaintiff was employed as a "seaman" by one of the defendants. Id. at 453-54. Thus, the statements in both cases about the possibility of more than one Jones Act employer are dicta, and in any event are not persuasive in the case of Shawhan and Roy Al who do not contend that one, rather than the other, is the employer.
 
 
 19
 For these reasons, the jury should not have been allowed to consider whether Shawhan was also Glynn's employer or to return a verdict against him on Glynn's negligence claim under the Jones Act.
 
 II
 
 20
 Both sides challenge the district court's award of attorney's fees on Glynn's claim for failure to pay maintenance and cure. Roy Al suggests that attorney's fees are not available in the absence of a finding of bad faith, whereas Glynn argues that the district court properly found that he was entitled to attorney's fees under Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), but erred because it failed to consider the appropriate factors set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).
 
 
 21
 The availability of attorney's fees for maintenance and cure claims has been established since Vaughan, in which the Court held that the injured seaman could recover attorney's fees incurred to secure a maintenance and cure award because the shipowner had been "willful and persistent" in its failure to investigate his claim or to pay maintenance. Id. at 531, 533, 82 S.Ct. at 1000, 1001. Although availability of attorney's fees was raised as an issue in Roy Al's brief, it was not seriously argued and Roy Al does not appeal the jury's verdict that it willfully and arbitrarily refused to pay maintenance and cure. Therefore we treat that issue as abandoned and turn instead to whether the district court abused its discretion in fixing the amount.
 
 
 22
 Glynn requested $61,069.01, of which $6,000 related to a salvage issue and the balance to prosecuting the entire action, including the Jones Act and unseaworthiness claims as well as the claim for maintenance and cure. He argues that because these claims were inextricably intertwined, and the defense was that the accident simply did not occur, it was impossible to separate the fees incurred by claim. As a result, Glynn suggested splitting the fees in half ($27,500). The district court, however, found that an award in that amount, which would have been more than three times the recovery for maintenance and cure, was not warranted.
 
 
 23
 In Kerr, we set out a number of factors that courts must consider in determining reasonable attorney's fees.[8] Glynn contends that the district court focused instead on how much the jury awarded him for maintenance, which, he submits, is not a proper consideration; if it were, injured seamen with relatively minor claims would never find counsel willing to take on their case. This would have the effect of undermining the policy animating Vaughan. However, the district court did not focus solely on the amount of maintenance and cure recovered. Judge Williams acknowledged the Kerr factors in his order, discussed them,[9] and considered the amount involved, how significant the maintenance and cure claim was in the trial, and the results obtained. Whether or not a higher award would have been appropriate, we cannot say the court abused its discretion in finding otherwise.
 
 III
 
 24
 Glynn challenges the district court's ruling that he was not entitled to recover punitive damages for willful and arbitrary failure to pay maintenance and cure. He argues that the court erred in extending Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), which held that nonpecuniary damages are unavailable in a wrongful death action, to the availability of punitive damages under the general maritime law when the claim is not a statutory cause of action and is not otherwise covered by the Jones Act. Glynn points out that we have previously recognized that punitive damages are available for failure to pay maintenance and cure, Evich v. Morris, 819 F.2d 256 (9th Cir.), cert. denied, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987), and contends that Miles affords no basis for overruling the view that punitive damages can be sought under general maritime law.
 
 
 25
 Roy Al and Shawhan argue that whereas this circuit has allowed attorney's fees for arbitrary, recalcitrant or unreasonable failure to provide maintenance and cure, Kopczynski v. The Jacqueline, 742 F.2d 555 (9th Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985), it has never authorized the recovery of punitive damages. They note that the cases upon which Glynn relies were decided before Miles, and that other circuits have interpreted Miles as applying more broadly than to wrongful death actions. See, e.g., Miller v. American President Lines, Ltd., 989 F.2d 1450 (6th Cir.) (punitive damages not available under general maritime law), cert. denied, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); Horsley v. Mobil Oil Corp., 15 F.3d 200 (1st Cir.1994) (no punitives available on unseaworthiness claim after Miles ). In any event, they suggest, an award of punitive damages in addition to attorney's fees runs afoul both of the Miles policy which favors uniformity in disallowing nonpecuniary damages, and the Supreme Court's earlier opinion in Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), which held that attorney's fees may be awarded in maintenance and cure cases where the defendant's default is "callous" or "willful and persistent." See Kraljic v. Berman Enters., Inc., 575 F.2d 412 (2d Cir.1978) (Vaughan does not permit recovery of punitive damages in addition to attorney's fees).
 
 
 26
 We have not squarely addressed this issue before.[10] As Glynn notes, we previously said in Evich that punitive damages are available for failure to pay maintenance and cure. However, that was not the question before the court, and the statement was dictum. We were considering whether punitive damages were available in a federal maritime survival action under general maritime law. In holding that they were, we remarked that "[p]unitive damages are available under general maritime law for claims of unseaworthiness [citations omitted], and for failure to pay maintenance and cure, Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1051-52 (1st Cir.1973)." Evich, 819 F.2d at 258.[11]
 
 
 27
 In Miles, the Court held that there is no right to recover for loss of society in an action for the wrongful death of a seaman, regardless of whether that action is brought under the Jones Act, the Death on the High Seas Act, or general maritime law. Having traced the genesis of the Jones Act in the FELA, with its limitation to recovery only for pecuniary loss, the Court assumed that the Congress intended to incorporate the pecuniary limitation on damages into the Jones Act as well. Since recovery for loss of society was not available under the Jones Act, it reasoned that courts are not free to allow such remedies under general maritime law and that recovery of lost future earnings is likewise preempted. 498 U.S. at 32-33, 36, 111 S.Ct. at 325-26, 327-28 ("Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent on them."). As the Court concluded:
 
 
 28
 [i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.
 
 
 29
 Id. at 32-33, 111 S.Ct. at 325-26. Thus, Miles holds that damages recoverable on a general maritime cause of action--there, for the wrongful death of a seaman--do not include losses not provided for in the "uniform plan of maritime tort law Congress created." Id. at 37, 111 S.Ct. at 328.
 
 
 30
 A number of circuits, including our own, have extended the Miles rationale to other claims arising under the general maritime law, and to punitive damages. For example, a number of courts have held that Miles applies to personal injury claims as well as to wrongful death claims. See, e.g., Horsley v. Mobil Oil Corp., 15 F.3d 200, 203 (1st Cir.1994) (under general maritime law, no right to recover for loss of society in unseaworthiness action involving nonfatal injury); Smith v. Trinidad Corp., 992 F.2d 996 (9th Cir.1993) (per curiam) (same); Murray v. Anthony J. Bertucci Constr. Co., 958 F.2d 127, 132 (5th Cir.) (same), cert. denied, --- U.S. ----, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992). The First and Sixth Circuits have also held that the reasoning in Miles extends to recovery of punitive damages in claims arising under the general maritime law. Horsley, 15 F.3d at 203 (unseaworthiness claim involving nonfatal injury); Miller, 989 F.2d at 1459 (wrongful death action alleging unseaworthiness).
 
 
 31
 Only the Fifth Circuit has considered the availability of punitive damages in maintenance and cure cases after Miles. It continues to follow its pre-Miles precedent in Morales v. Garijak, Inc., 829 F.2d 1355 (5th Cir.1987), which upheld a punitive damage award for failure to pay maintenance and cure. As the court recently explained in a per curiam opinion in Guevara v. Maritime Overseas Corp., 34 F.3d 1279 (5th Cir.1994), Miles is not so directly contrary to Morales as to allow a panel to depart from previous decisions despite an argument of "great force" that punitive damages under the general maritime law run counter to Miles. Guevara, 34 F.3d at 1284. However, Judge Garwood in a concurring opinion urged en banc reexamination, since granted, 1994 U.S.App. LEXIS 31032 (No. 92-4711) (5th Cir. Nov. 4, 1994), on the footing that:
 
 
 32
 If the First and Sixth Circuits, the Texas Supreme Court, and all the rest of the courts that have considered the matter, are correct that Miles bars recovery of punitive damages in a cause of action for unseaworthiness, as I believe they are, then this Court en banc should seriously rethink its previous panel decisions allowing punitive damages in maintenance and cure cases.
 
 
 33
 34 F.3d at 1285 (footnote omitted). Unlike the Fifth Circuit, we are not constrained by binding precedent on this question. See supra; see also Guevara, 34 F.3d at 1286 & n. 4.
 
 
 34
 Because Miles did not consider the availability of punitive damages, and was not faced with a claim for maintenance and cure that has no statutory analog, it does not directly control the question of whether punitive damages are available for the willful failure to pay maintenance. Rather, we must also look to Vaughan v. Atkinson, in which the Court for the first time allowed recovery beyond the expenses required for maintenance and cure.
 
 
 35
 As we indicated in Evich, punitive damages were generally held to be available in the pre-Miles era for claims under general maritime law, including the willful failure to pay maintenance. See, e.g., Pocahontas, 477 F.2d 1048 (1st Cir.1973) (punitive damages recoverable for nonpayment of maintenance and cure); Kraljic, 575 F.2d 412 (2d Cir.1978) (punitives recoverable for nonpayment of maintenance and cure, but limited to amount of attorney's fees); Holmes v. J. Ray McDermott & Co., 734 F.2d 1110 (5th Cir.1984) (punitive damages for nonpayment of maintenance and cure); Morales v. Garijak, Inc., 829 F.2d 1355 (5th Cir.1987) (shipowner refusing to pay maintenance and cure subject to escalating scale of liability, including punitive damages); Hines v. J.A. LaPorte, Inc., 820 F.2d 1187 (11th Cir.1987) (punitives available for withholding of maintenance and cure). In each of these cases, however, the circuits upholding the availability of punitive damages for failure to pay maintenance relied, directly or indirectly, on Vaughan v. Atkinson.[12] In Vaughan, the Court for the first time acknowledged that damages for the failure to give maintenance and cure may include necessary expenses, including attorney's fees, when the failure to pay maintenance is willful and persistent. A seaman had sued for maintenance and cure and sought attorney's fees because the vessel owner failed to investigate his claim. Although punitive damages as such were not at issue, the Court held that the seaman was entitled to attorney's fees because the shipowner's default was "callous," "willful and persistent":
 
 
 36
 While failure to give maintenance and cure may give rise to a claim for damages for the suffering and for the physical handicap which follows, the recovery may also include necessary expenses.
 
 
 37
 In the instant case respondents were callous in their attitude, making no investigation of libellant's claim and by their silence neither admitting nor denying it. As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court to get what was plainly owed him.... The default was willful and persistent. It is difficult to imagine a clearer case of damages suffered for failure to pay maintenance than this one.
 
 
 38
 369 U.S. at 530-31, 82 S.Ct. at 999-1000 (citations and quotations omitted). Justice Stewart, joined by Justice Harlan, dissented on the footing that there was no basis for departing from the rule that "counsel fees may not be recovered as compensatory damages." Id. at 540, 82 S.Ct. at 1004. The dissent further stated:
 
 
 39
 However, if the shipowner's refusal to pay maintenance stemmed from a wanton and intentional disregard of the legal rights of the seaman, the latter would be entitled to exemplary damages in accord with traditional concepts of the law of damages. While the amount so awarded would be in the discretion of the fact finder, and would not necessarily be measured by the amount of counsel fees, indirect compensation for such expenditures might thus be made.
 
 
 40
 Id. (citations omitted).
 
 
 41
 We considered Vaughan in the context of a maintenance and cure claim in Kopczynski v. The Jacqueline, 742 F.2d 555 (9th Cir.1984). There, the seaman claimed that he should have been awarded attorney's fees in conjunction with his maintenance and cure award; we appeared to treat Vaughan as authorizing attorney's fees incurred to secure a maintenance and cure award as an additional item of maintenance and cure, and agreed with the Second Circuit that attorney's fees are available "only when the failure to provide maintenance and cure was arbitrary, recalcitrant or unreasonable."[13] Kopczynski, 742 F.2d at 559.
 
 
 42
 Whether or not the attorney's fees permitted in Vaughan should be regarded as "punitive" because based on callous and willful conduct, see Kraljic (so characterizing Vaughan ); but see Guevara, 34 F.3d at 1288-1290 (concurring opinion, construing Vaughan as fee-shifting case in accord with bad-faith exception to the American rule for abuse of litigation process), we see no support for punitive damages in addition to attorney's fees in Vaughan itself, or our interpretation of it in Kopczynski. Instead, by allowing attorney's fees contrary to the normal American rule, Vaughan provides seamen with an appropriate remedy for the "necessary expenses" and damages caused by a willful and persistent failure to pay what is due: hiring a lawyer, filing suit, and incurring legal expenses on top of expenses for their own maintenance and cure.
 
 
 43
 We see no other reason why punitive damages, in addition to attorney's fees, should be allowed. The threat of liability for attorney's fees adequately serves to deter recalcitrance, as they would likely exceed interim maintenance and cure and the use of money which would otherwise have paid it. Punitive damages, in addition to attorney's fees, are thus not needed to provide a powerful incentive for shipowners to investigate and pay promptly. We are also mindful that maintenance and cure is a pseudo-contractual obligation, Vaughan, 369 U.S. at 532-33, 82 S.Ct. at 1000-1001, and that absent contrary authority--which Vaughan does not afford--punitive damages are not normally recoverable on contract claims. Finally, limiting recovery to pecuniary damages is consistent with Miles.[14]
 
 
 44
 We therefore hold that punitive damages are not available, although attorney's fees are, where the shipowner has been willful and persistent in its failure to investigate a seaman's claim for maintenance and cure or to pay maintenance.
 
 IV
 
 45
 Glynn also appeals the district court's refusal to award prejudgment interest because it was not submitted to the jury. Every other circuit that has considered the issue has held that where a maritime claim is tried before a jury, the amount of prejudgment interest must be submitted to the jury. See, e.g., Petersen v. Chesapeake & Ohio Ry. Co., 784 F.2d 732, 740 (6th Cir.1986); Havis v. Petroleum Helicopters, Inc., 664 F.2d 54, 55 (5th Cir.1981); Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1052-53 (1st Cir.1973); Newburgh Land & Dock Co. v. Texas Co., 227 F.2d 732, 735 (2d Cir.1955). All of the cases cited by Glynn were admiralty cases tried to the court. We see no reason to part company with other circuits on this point.
 
 
 46
 Glynn presented no evidence regarding prejudgment interest, nor did he request a jury instruction or object to the failure to give one. As the parties did with respect to the amount of attorney's fees, they could have stipulated that the amount of interest would be determined by the court. Not having done so, we see no reason to disturb the district court's decision that Glynn waived entitlement to prejudgment interest.
 
 V
 
 47
 Finally, Glynn asserts that the district court erred in ruling that a magistrate could not order payment of maintenance and cure as a condition for removing a default entered against Roy Al, Shawhan, and the F/V NO PROBLEM. The district court found there was a material issue of fact about whether Glynn was entitled to maintenance and cure, so that summary judgment would have been premature. Therefore, while relief from default may be conditioned to rectify "any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation," Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1546 (9th Cir.1988) (per curiam), there is no authority suggesting that lifting a default can be conditioned on paying maintenance before the issue is ripe for decision on the merits. Cf. Thorpe v. Thorpe, 364 F.2d 692, 694-95 (D.C.Cir.1966) (requiring defendant to place in escrow not only amount of default judgment, but maximum amount demanded by plaintiff in her complaint, was "unprecedented" condition that could not be imposed without sufficient supporting findings to show that it represented reasonable exercise of discretion).
 
 
 48
 Glynn argues that the strong public policy favoring prompt payment of maintenance and cure warrants the conditions imposed in this case. See Vella v. Ford Motor Co., 421 U.S. 1, 4, 95 S.Ct. 1381, 1384, 43 L.Ed.2d 682 (1975).[15] However, whether Glynn's alleged accident aboard the NO PROBLEM even occurred was a disputed issue of fact that had to be determined before Glynn could prevail on his claim. Under these circumstances, the district court did not err in concluding that a grant of maintenance was premature.
 
 
 49
 Each side shall bear its own costs on appeal.
 
 
 50
 AFFIRMED IN PART; REVERSED IN PART.
 
 RYMER, Circuit Judge, dissenting in part:
 
 51
 I dissent from the majority's opinion in Part III only because I feel constrained by our court's prior statement in Evich v. Morris, 819 F.2d 256, 258 (9th Cir.1987), that punitive damages are available for failure to pay maintenance and cure.
 
 
 
 *
 Parts I, II, IV, and V of the opinion by Judge Rymer; part III by Judge Farris
 
 
 [1]
 The presiding judge at trial was the Hon. Spencer Williams, sitting by designation
 
 
 [2]
 The statute provides in relevant part:
 Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply....
 46 U.S.C.App. Sec. 688(a).
 
 
 [3]
 Roy Al does not contend that Glynn's employer was Shawhan instead of Roy Al; rather, it has maintained that Glynn was not an employee of either Shawhan or itself. Nor has it taken the position that Shawhan had a bareboat or demise charter, such that he would be the owner pro hac vice of the vessel, and as a result, Glynn's employer. See The Norland (Loe v. Goldstein), 101 F.2d 967, 971 (9th Cir.1939)
 
 
 [4]
 Although Roy Al suggests that Glynn could have been an independent contractor, its argument focuses entirely on the possibility of the jury finding him to be a joint venturer
 
 
 [5]
 Glynn suggests that we should not reach this question because Roy Al and Shawhan waived their right to challenge the sufficiency of the evidence by failing to renew their motion for a directed verdict at the close of the evidence. We disagree, because both opposed, and therefore preserved their objection to, the court's determination as a matter of law that Glynn was Roy Al's employee and that more than one person could be a Jones Act "employer."
 
 
 [6]
 In the district court Glynn conceded that "the law is pretty clear that you've got one Jones Act employer," but argues to the contrary now
 
 
 [7]
 Glynn's IRS Form 1099, which contained no deductions for tax or social security, might arguably be probative but for the fact that it could not have been prepared or furnished to Glynn before his injury or this litigation. Roy Al conceded as much at argument
 
 
 [8]
 These factors are:
 (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.
 Kerr, 526 F.2d at 70.
 
 
 [9]
 He found that:
 Plaintiff's maintenance and cure claim did not engender complicated questions of fact or law and constituted only a small portion of the trial. Furthermore, the case was filed and tried in less than a year and nothing in the record suggests that Plaintiff's attorney was required to conduct complicated discovery or legal research in preparation for this trial. Given the simplicity of the issues involved, it was not necessary for Plaintiff to be represented by an attorney with extraordinary or specialized skills to prosecute his claim properly.
 
 
 [10]
 Three district courts in our circuit have considered the question. Two concluded that Miles does not extend to maintenance and cure claims, Ortega v. Oceantrawl, Inc., 822 F.Supp. 621, 624 (D.Alaska 1992); Ridenour v. Holland Am. Line Westours, Inc., 806 F.Supp. 910, 911 (W.D.Wash.1992), and one held that punitive damages are unavailable under Miles. La Voie v. Kualoa Ranch & Activity Club, Inc., 797 F.Supp. 827, 831 & n. 3 (D.Haw.1992)
 
 
 [11]
 Likewise in Sample v. Johnson, 771 F.2d 1335, 1347 n. 12 (9th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986), where we were considering whether an injured longshoreman had a private right of action to sue for damages in excess of those prescribed by the LHWCA, we noted in passing that "[p]unitive damages are awardable, in some circumstances, to a seaman where payment for maintenance and cure is wrongfully denied." Both Evich and Sample pre-date Miles and referred to pre-Miles cases
 
 
 [12]
 In Pocahontas, the First Circuit found "[s]upport for such an award ... in Vaughan v. Atkinson," 477 F.2d at 1051, but relied on that portion of the dissenting opinion which embraced the notion of exemplary damages. Id. (quoting Vaughan, dissenting op., 369 U.S. at 540, 82 S.Ct. at 1004, quoted infra). The Second Circuit relied on Vaughan in holding that punitive damages are limited to a seaman's attorney's fees. Kraljic, 575 F.2d at 416. The Fifth Circuit relied on Pocahontas, and noted Pocahontas 's reliance on Vaughan. Complaint of Merry Shipping, Inc., 650 F.2d 622, 625 (5th Cir.1981) (unseaworthiness); Holmes, 734 F.2d 1110 (maintenance and cure). In Hines, the Eleventh Circuit stated that while Vaughan is not dispositive, following Merry Shipping, exemplary damages would not be foreclosed even if attorney's fees were punitive in nature. 820 F.2d at 1189
 
 
 [13]
 Even though the vessel owner had appealed an award of punitive damages, and we agreed that "such damages are not recoverable in this case," our discussion focused on whether punitives are recoverable under the Jones Act. Id. at 560
 
 
 [14]
 Punitive damages are nonpecuniary damages. Bergen v. F/V St. Patrick, 816 F.2d 1345, 1347 (9th Cir.1987)
 
 
 [15]
 Denial of maintenance and cure when the seaman's injury, though in fact permanent immediately after the accident, is not medically diagnosed as permanent until long after its occurrence would obviously disserve and frustrate the "combined object of encouraging marine commerce and assuring the well-being of seamen." A shipowner might withhold vitally necessary maintenance and cure on the belief, however well or poorly founded, that the seaman's injury is permanent and incurable
 Id.