**Kelly LONG, Plaintiff,**

v.

**F/V MELANIE, Official No. 512191, and her engines, etc., et al., Defendants.**

No. C95–502D.

United States District Court,
W.D. Washington.

March 5, 1996.

David S. Teske, David Teske & Associates, Seattle, WA, for plaintiff.

Thomas Frank Paul, B. Otis Felder, LeGros, Buchanan & Paul, Seattle, WA, for defendants.

### ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DIMMICK, Chief Judge.

Plaintiff is an injured seaman whose initial motion sought partial summary judgment that he was entitled to double wages under Washington state law for wages he was denied as part of maintenance and cure. There

---

are clearly issues of fact which preclude a decision that plaintiff is entitled to double wages. In his reply, however, plaintiff requests a declaratory judgment that Washington law applies.

After full consideration of the briefs and affidavits filed by counsel, the Court concludes that even if plaintiff were to prove his factual assertions, the Washington statute would not apply in these circumstances.[1]

## ISSUE

Are defendants liable under a Washington statute (RCW 49.52.040, providing for payment of double wages for willful withholding of wages) when the vessel's home base is Washington and it is owned by a Washington corporation; but, its primary job site is on the high seas and plaintiff seaman is an Oregon or Alaska resident who signed on in Alaska and seeks unearned wages under federal general maritime law for maintenance and cure?

There are two issues of fact inherent in resolving the motion:

(1) Whether Long was hired for duty beyond the 1994 Bairdi crab season; and

(2) Whether defendants' refusal to pay for wages beyond the Bairdi season was an honest dispute over their duty to pay.

Only if the trier of fact says "yes" to both of these questions, does the Court reach the issue of law.

## FACTS

■ It is undisputed that the home port of the defendant vessel F/V MELANIE is Seattle, Washington and that defendant Melanie, Inc. was incorporated in Washington. Plaintiff Kelly Long was a seaman aboard the F/V MELANIE in November of 1994 when he broke his elbow. He subsequently had surgery on his elbow in May of 1995. Apparently, he signed on the vessel in Alaska and left at the end of the voyage in which he was injured. Long signed on for at least the Bairdi crab season and has been paid for the Bairdi crab season. He does not claim to be a Washington resident or to have been on a voyage in Washington waters.

Long, however, contends that he signed on for the entire crab season and thus is entitled to unearned wages for the entire period. *See, e.g., Farrell v. United States,* 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949) (seaman injured in service of vessel entitled to unearned wages as part of maintenance and cure under federal general maritime law); *Vitco v. Joncich,* 130 F.Supp. 945, 949 (S.D.Cal.1955), *aff'd,* 234 F.2d 161 (9th Cir. 1956) (right to receive agreed wages to the end of the voyage).

There is a genuine dispute as to whether Long signed on for the entire crab season. No copy of a contract is in evidence. In his declaration, Long says he is entitled to approximately $5,000 for the Tanner crab season and $46,000 for the Opilio crab season. CP 15 (Ex. 1). Defendants disagree. The captain states that Long signed on only for the Bairdi crab season—November 1 to November 21, 1994.

## DISCUSSION

Defendants oppose plaintiff's motion on several grounds, including material issues of fact discussed above. They also argue (1) that there is a choice of law issue here—whether Washington, Alaska or Oregon provides the law; (2) that the payments under maintenance and cure are not "wages" and, therefore, RCW 49.52.050 does not apply; and (3) that the Ninth Circuit balancing test for federal preemption would rule out application of Washington law.

■ As explained next, this Court concludes that the Washington statute conflicts with the federal scheme for maintenance and cure available to a seaman under federal general maritime law; and applying the Ninth Circuit's balancing test, federal law preempts state law. This analysis begins with a United States Supreme Court case holding that federal law preempted application to seamen of a Texas right-to-work law. *Oil, Chemical and Atomic Workers International Union v. Mobil Oil Corp.,* 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976). The issue in that case was "whether § 14(b) permits the application of Texas' right-to-work laws to the agency-shop provision in the collective-bargaining agreement between

1. The Court concludes that oral argument is un-    necessary.

the Union and respondent." *Id.* at 412, 96 S.Ct. at 413. (footnote omitted). Section 14(b) referenced in the *Mobil Oil* opinion refers to 29 U.S.C. § 164(b) which permits individual states to exempt themselves from provisions of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) and to enact right-to-work laws. The *Mobil Oil* Court held that the state law was preempted on the basis that workers aboard an oil tanker primarily worked on the high seas.

In a subsequent case, the Ninth Circuit built on the *Mobil Oil* holding, analyzing it again on the basis of federal preemption. *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir.1990), *cert. denied*, 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992). At issue in *Aubry* was application of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 and the exemption of seamen from overtime coverage under 29 U.S.C. § 213(b)(6). The court engaged in a complex analysis of why FLSA did not preempt, and concluded that "enforcement of California's overtime provisions to protect the California resident seamen in this case" was not precluded. The decision was premised on the fact that plaintiffs were primarily working in California waters or off the California coast, and California had an interest in protecting California residents. *Id.* at 1427.

Plaintiff relies on several district court cases following *Aubry* in which the court recognized that state law was not in conflict with federal law and was not preempted by it. *See, e.g., Greene v. Pacific King Fisheries, Inc.*, 1993 W.L. 565333, 1993 A.M.C. 2578 (W.D.Wash., Jan. 14, 1993). Plaintiffs in *Greene* sued for enforcement of written contracts for a share of the catch. In a thoughtful analysis, the *Greene* court held that the federal interest would be supplemented by state law which would encourage payment of seamen's wages, thus there was no conflict. *Id.* at 8.

Since the *Greene* decision, however, the Ninth Circuit has spoken again in *Fuller v. Golden Age Fisheries*, 14 F.3d 1405 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994). In *Fuller*, the

court held that the FLSA provision exempting seamen from federal overtime laws preempted claims under Alaska's minimum wage and overtime laws and distinguished its decision in *Aubry*:

> *Aubry* is distinguishable from this case because it does not apply to coastwise voyages and turns on significant state interests not present in this case. Unlike the crewmembers in *Aubry*, plaintiffs here were engaged · in coastwise voyages and their predominant job situs was the high seas rather than the territorial waters of ·Alaska.
>
> Also important is the fact that plaintiffs here were not Alaska residents, unlike the California resident fishermen in *Aubry*. Here, the fishermen were generally hired and began their employment in Seattle, and at the conclusion of their employment, were typically flown back to Seattle. Their contact with Alaska was minimal compared to the extensive contact the *Aubry* plaintiffs had with the state of California.

*Fuller*, 14 F.3d at 1409 (footnote omitted). The *Fuller* court emphasized (1) the seamen's contacts with the state, (2) the state's interest in protecting its residents, and (3) the federal interest in uniformity of law where the job situs is in international waters.

Plaintiff distinguishes *Fuller* and invites an application of the reasoning in *Greene* on the basis that the Washington statute is not in conflict with the federal law, but merely supplements it.[2] In this regard, the Court concludes that the double wages imposed under RCW 49.52.040 are punitive in nature, as plaintiff concedes by his own description. Punitive damages are disallowed in an action for maintenance and cure. *Glynn v. Roy Al Boat Management Corp.*, 57 F.3d 1495, 1502–05 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996) (holding attorneys' fees available for willful failure to pay maintenance and cure, but no additional punitive damages allowable). This case was based primarily on the United States Supreme Court holdings in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct.

---

2. This is clearly an area of unsettled law. In an earlier case, this Court applied Washington law to a seaman's wage claim case. *Chirrick v. F/V SHARON LORRAINE*, No. C95–936D

(W.D.Wash.) order filed Jan. 24, 1995. This decision, however, was influenced in large part by a written contract which called for application of Washington law.

317, 112 L.Ed.2d 275 (1990) (limiting availability of non-pecuniary damages); and *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (maintenance and cure claim is contractual only in the sense that it grows out of a contractual relationship; attorneys' fees may qualify as damages for failure to pay maintenance and cure).

The parties cite to no cases in which maintenance and cure remedies have been augmented by state law, and in view of the *Glynn* court's limitation of punitive damages, augmentation is not justified in these circumstances. This is particularly so when Washington has so little interest under the *Fuller–Aubry* balancing test: (1) Long has no contact with Washington—he does not claim to be a resident or to have signed on in Washington; (2) the state's interest is not so strong when it is governing one of its corporations, but not protecting its own residents; and (3) it is undisputed that most of the voyage was on the high seas and never in Washington territorial waters. The federal interest in uniformity is thus controlling.

Therefore, this Court DENIES plaintiff's motion for partial summary judgment and holds that Washington law does not apply in these circumstances.