**Woodrow Steve ANDERSON**

v.

**TEXACO, INC., et al.**

Civ. A. Nos. 90–4623, 91–4300 and 92–197.

United States District Court, E.D. Louisiana,

June 24, 1992.

---

12. *United States v. Soudan,* 812 F.2d 920 (5th Cir.1986).

13. *Id.*

14. *United States v. Sanchez,* 961 at 1176.

Ross M. Herman, Herman, Herman, Katz & Cutlar, New Orleans, La., for Anderson.

Charles E. Leche, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Texaco.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendant Penrod Drilling Corp.'s 12(b)(6) motion to dismiss the personal injury plaintiffs' punitive damages claims. For the reasons that follow, Penrod's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

These three consolidated cases [1] arise out of a gas explosion aboard the drilling rig Penrod 93.

At about 2:30 a.m. on November 23, 1989, Michael Pierce, Penrod's acting driller, awoke plaintiff, Woodrow Steven Anderson, and asked him to help in conducting a pressure test of a lubricator on defendant Texaco Inc.'s natural gas production platform. In connection with the test, a hose called a "chicksan line" was run from the platform's "Christmas tree" (a mechanism of valves controlling the gas flow from the wellhead) to a pump aboard the Penrod 93. Anderson was supposed to pump water through this line into the Christmas tree to accomplish the pressure test.

After completing the test, Anderson released the pressure by bleeding the line of water and left the bleed valves open. Then Anderson was told he could return to his quarters. Plaintiffs contend that, as

---

**1.** Apparently, a court in another district has ordered a fourth case arising out of this incident transferred to this Court. But the Court can find nothing in the record indicating that such a transfer has yet occurred.

Anderson started back to his room, employees of Penrod and still another defendant, Cardinal Wireline Specialists, Inc., began a sequential opening and closing of various valves on the Christmas tree which was necessary to return the well to operating order. However, it is said, the workers made mistakes in the sequence in which some valves were opened and closed. This allowed gas to flow up the chicksan line and into the pump room on the Penrod 93.

Anderson was summoned and told that there was a problem in the pump room. He went to investigate. According to plaintiffs, just as Anderson was approaching the pump room door, the gas ignited. Anderson was apparently injured when the explosion literally blew the door off its hinges and into his face. Plaintiff Michael Broussard was asleep in his room at the time of the explosion. He was injured when the force of the explosion threw him from his bunk.

Anderson and Broussard have sued Penrod, Cardinal, and Dowell Schlumberger, Inc. (Anderson's employer) for their personal injuries. Anderson's claims against Texaco, Penrod, and Dowell invoke both the Jones Act, and the general maritime law of negligence. He adds claims against Texaco and Penrod under the general maritime law of unseaworthiness, and against Cardinal under the general maritime law of negligence. Broussard, on the other hand, sues Penrod under the Jones Act and for the unseaworthiness of the Penrod 93. He says that Texaco, Cardinal and Dowell are liable under the general maritime law of negligence. Finally, Broussard claims that Penrod breached its duty to pay him maintenance and cure while he was hurt.[2]

These plaintiffs seek not only a variety of compensatory damages, but they also allege that they are entitled to punitive damages. Anderson contends that all of the defendants are liable for punitive damages on all his claims. Broussard seeks punitive damages only on his unseaworthiness and failure to pay maintenance and cure claims against Penrod. Penrod has moved to dismiss all the punitive damages claims against it.

## LAW AND APPLICATION

### I.

■ Anderson's claims for punitive damages under the Jones Act are foreclosed by the Supreme Court's decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), and the Fifth Circuit's recent dictum in *Murray v. Anthony J. Bertucci Construction Co.*, 958 F.2d 127 (5 Cir.1992).

### A.

In *Miles*, the Supreme Court faced, among other things, the question whether a deceased seaman's surviving parent could recover loss of society damages for the wrongful death of a seaman under the Jones Act. Initially, the Court noted that, unlike the Death on the High Seas Act, the Jones Act on its face does not limit the scope of recoverable damages. *Miles*, 111 S.Ct. at 325. However, the Court said, the Jones Act does incorporate unaltered the substantive recovery provisions of FELA. Long before Congress enacted the Jones Act, *Miles* stressed, it was well-established that FELA authorized recovery only for pecuniary loss. *Id.* (citing *Michigan Central R. Co. v. Vreeland*, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913)).

The Supreme Court concluded that, because the so-called "*Vreeland* gloss on FELA" was firmly rooted when Congress enacted the Jones Act, and because Congress expressly incorporated FELA's substantive provisions into the Jones Act, "Congress must have intended to incorporate the pecuniary limitation on damages as well." *Miles, supra.* Hence, the Court held that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." *Id.*

---

**2.** Additionally, Penrod has sued all the other defendants, claiming that they are liable to Penrod for the damages the explosion caused the Penrod 93. And, predictably, all the defendants have filed cross-claims directed at apportioning the fault each must bear if the personal injury plaintiffs are successful.

### B.

Although there are no circuit decisions directly on point, the post-*Miles* district court cases, in this district and in others, speak with one voice in concluding that punitive damages are nonpecuniary and, therefore, are not recoverable under *Miles*'s interpretation of the Jones Act. *See Matter of Waterman Steamship Corp.*, 780 F.Supp. 1093, 1095–96 (E.D.La. 1992); *Complaint of Aleutian Enterprise, Ltd.*, 777 F.Supp. 793, 794 (W.D.Wash. 1991); *Brumfield v. Zapata Gulf Marine Corp.*, 1991 WL 174818 (E.D.La. August 29, 1991); *Rowan Companies, Inc. v. Badeaux*, 1991 WL 175541, 1991 U.S.Dist. Lexis 12355 (E.D.La. August 28, 1991); *Rollins v. Peterson Builders, Inc.*, 761 F.Supp. 943, 948 (D.R.I., 1991).[3]

■ This Court agrees. There can be little doubt that punitive damages are nonpecuniary in character. Pecuniary damages are awards designed to restore "material loss which is susceptible of a pecuniary valuation." *Vreeland*, 227 U.S. at 71, 33 S.Ct. at 196 (internal quotation omitted). Punitive damages, on the other hand, do not compensate for a loss, but rather, are imposed to punish and deter by virtue of the gravity of the offense. *See Molzof v. United States*, —— U.S. ——, ——, 112 S.Ct. 711, 715, 116 L.Ed.2d 731 (1992) (Punitive damages are awards given " 'having in view the enormity of [the] offense rather than the measure of compensation to the plaintiff.' ") (quoting *Day v. Woodworth*, 13 How. 363, 371, 14 L.Ed. 181 (1852)); *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432, 434 n. 2 (5 Cir.1962) (Punitive damages are " 'damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct.' " (quoting Restatement of Torts, § 903)); *see also Ber-*

*gen, supra*, at 1347 ("Punitive damages are non-pecuniary damages...."); *Kopczynski, supra*, at 561 (same); *Waterman, supra*, at 1095 ("There is much authority that punitive damages are not pecuniary in nature.").

*Miles* teaches that the Jones Act's claimants are limited in what they may recover to their pecuniary losses alone. Accordingly, Jones Act seamen like Anderson cannot recover punitive damages, under the Act.

### II.

■ A more perilous terrain is encountered when considering whether, despite the Jones Act's bar of nonpecuniary relief, these plaintiffs may nevertheless recover punitive damages under the general maritime law. Their claims under the general maritime law (except for Broussard's asserted entitlement to punitive damages for failure to pay maintenance and cure) encompass the same factual events and the same injuries as their Jones Act claims. Only the theory of recovery in which the claims are couched is different. Their general maritime law theories are: (1) that the Penrod 93 was unseaworthy and (2) that the defendants were negligent in causing the explosion.

Punitive damages have long been awarded under the general maritime law against defendants who engage in "lawless misconduct" that amounts to "gross and wanton outrage." *The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 558, 4 L.Ed. 456 (1818). And the Fifth Circuit held, pre-*Miles*, that even if punitive damages are barred under the Jones Act, they are recoverable under the general maritime law of unseaworthiness if the shipowner's breach of his duty reveals the requisite bad state of mind. *See Merry Shipping*, 650 F.2d at 626.

---

**3.** Indeed, even before *Miles*, the Ninth Circuit had held that because the Jones Act incorporates FELA, FELA limits recovery to pecuniary loss, and because punitive damages are nonpecuniary, a seaman cannot recover punitive damages under the Jones Act. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1347 (9 Cir.1987); *Kopczynski v. The Jacqueline*, 742 F.2d 555, 560–61 (9 Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). And the Fifth

Circuit has noted (without deciding the issue) that its previous holding that only pecuniary damages were recoverable under the Jones Act cast serious doubt upon the availability of punitive damages under the Act. *See Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 626 (5 Cir. 1981) (citing *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524, 526 (5 Cir.1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980)).

The question on this motion is the effect of *Miles* and following cases on the recoverability of punitive damages under the general maritime law. Plaintiffs invoke *Merry Shipping* and say it has not been overruled. They argue that *Miles* did not target punitive damages and should not be extended to bar such awards. Penrod's contrary reading is that *Miles* not only has overruled *Merry Shipping*, but also has limited the remedies available under all general maritime law theories to those the Jones Act allows.

Post–*Miles* district court decisions have differed on this issue. *Compare Petition of Cleveland Tankers, Inc.,* 791 F.Supp. 679 (E.D.Mich.1992) (*Miles* bars seaman's punitive damages claim under the general maritime law in personal injury setting because "the central tenet of *Miles* [is] that where Congress has legislated in an area of maritime law, case law-created remedies must be uniform with such legislation."); *Howard v. Atlantic Pacific Marine Corp.,* 1992 WL 55487 (E.D.La. February 28, 1992) ("*Miles*'s policy of uniformity of damages of the Jones Act, DOHSA and the general maritime law precludes recovery of punitive damages for unseaworthiness or negligence...."); *Rowan Companies v. Badeaux,* 1991 WL 175541 (E.D.La. August 28, 1991) *and Waterman,* 780 F.Supp. at 1096 (E.D.La.1992) (Because the Jones Act and DOHSA "restrict losses to pecuniary ones, judicially-created maritime law also should so restrict.") *with Logue v. Tidewater, Inc.,* 1992 WL 59409 (E.D.La. March 17, 1992) (Refusing to extend *Miles* beyond claims for loss of society and consortium to bar Jones Act/general maritime law claim for punitive damages); *Hannon v. Waterman Steamship Corp.,* 1991 WL 278996 (E.D.La. December 20, 1991) *and Davis v. Penrod Drilling Corp.,* 1991 WL 264541 (E.D.La. December 4, 1991).

This Court agrees with the reasoning of the *Cleveland Tankers* line of cases. To say that *Miles* should be strictly limited to its facts is to ignore the doctrinal underpinnings of the decision. *Miles* compels the conclusion that a plaintiff who is statutorily barred from receiving a punitive award cannot recover punitive damages by couch-

ing his claim in the judge-made general maritime law of negligence and unseaworthiness. *Merry Shipping* has, indeed, been overruled. *See Waterman, supra.*

### A.

*Miles*'s decision that there is no cause of action for loss of society in cases involving the wrongful death of a seaman under DOHSA, the Jones Act, or the general maritime law is driven by these "fundamental principles":

> We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation.

*Miles,* 111 S.Ct. at 323. Thus, although courts may "supplement" a seaman's remedies when Congress has left gaps which need to be filled, courts cannot use their power under the general maritime law to create remedies that exceed those granted (or limited) by statute. Uniformity and respect for legislative dictates animate *Miles.*

In considering the scope of remedies available for the wrongful death of a seaman, the Supreme Court noted that in DOHSA, Congress had spoken directly to the damages recoverable in a wrongful death case arising on the high seas. Congress said that recovery would be limited to "'pecuniary loss sustained by the persons for whose benefit the suit is brought.'" *Id.* at 325 (quoting 46 U.S.C.App. § 752) (Supreme Court's emphasis deleted). Further, *Miles* concluded,

Congress similarly restricted the scope of available relief in Jones Act wrongful death cases to pecuniary damages by incorporating into the Act FELA's substantive provisions, including its damages limitation.

Undaunted, the *Miles* petitioner maintained that she could nevertheless get loss of society damages under the general maritime law of unseaworthiness. The Court rejected this approach, and held that there can be "no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Id.* at 326. The Court said that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id.* In sum, the Supreme Court concluded that it had, as its guiding policy required, "restore[d] a uniform rule applicable to all actions for wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.*

■ Accordingly, after *Miles*, admiralty courts cannot now view the general maritime law as another life-bearing star in the litigation galaxy when determining the scope of permissible relief in maritime cases. Instead, courts must first evaluate the factual setting of the case and determine what statutory remedial measures, if any, apply in that context. If the situation is one addressed by a statute like the Jones Act or DOHSA, and the statute informs and limits the damages that are recoverable, the statute alone governs the remedy. The general maritime law will not expand the damages available when Congress has spoken to the relief it deems appropriate or inappropriate. The statutory mandate is supreme and precludes inconsistent judicial "supplements." *See Miles, supra,* at 325 ("[W]hen [Congress] does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly

that the [a]ct becomes meaningless." (internal quotation omitted)). *See also Murray,* 958 F.2d at 131 ("[T]he Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes any recovery for nonpecuniary losses . . . .") (dictum).

## B.

The application of *Miles* here compels the dismissal of the plaintiffs' unseaworthiness and general maritime negligence punitive damages claims against Penrod, but, however, does not affect Broussard's punitive damages claim for failure to pay maintenance and cure.

■ Penrod contends that after *Miles,* "non-pecuniary damages are clearly not recoverable under the General Maritime Law." This overstates *Miles*'s teaching. *Miles* does not affect the availability of nonpecuniary damages under the general maritime law, if Congress has not already defined the relief available in a particular factual setting.

Thus, punitive damages for willful failure to pay maintenance and cure, a firmly rooted general maritime law claim, is unaffected by *Miles* because failure to pay is a contractual claim not reached by any maritime statute. Such claims do not implicate negligence or strict liability values. *See Collinsworth v. Oceanic Fleet, Inc.,* 1991 WL 165732, 1991 U.S.Dist. Lexis 11759 (E.D.La. August 19, 1991); *see also Howard, supra* (*Miles* inapplicable to punitive award for failure to pay maintenance and cure because "unlike unseaworthiness and negligence claims, maintenance and cure claims have no counterpart under the Jones Act or the DOHSA."); *Badeaux, supra* (Remedies for failure to pay unaffected by *Miles* because "Congress has left to the courts the task of 'writing the rules' on maintenance and cure.").

Accordingly, Penrod's motion to dismiss the plaintiffs' punitive damages claims is GRANTED IN PART and DENIED IN PART. The motion is granted as to all the plaintiffs' claims for punitive damages

against Penrod, except Broussard's claim for willful failure to pay maintenance and cure.[4]

---

**4.** However, the plaintiffs might be entitled to pursue punitive damages claims in the event the plaintiffs are shown to fall outside the statutory umbrella of the Jones Act (for instance, if they are not seamen). The parties have not addressed this problem and the Court leaves its resolution for another day.