**Peggy S. WATTERS, Plaintiff,**

**v.**

**HARRAH'S ILLINOIS CORP.,**
**d/b/a Harrah's Casino–**
**Joliet, Defendant.**

**No. 97 C 8968.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 14, 1998.

---

J. Dillon Hoey, Richard A. Haydu, James Louis Farina, George T. Brugess, Daniel J. Downes, James Timothy Foley, Hoey, Farina & Downes, Chicago, IL, for Plaintiff.

Glenn C. Ronaldson, Alholm & Monahan, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Harrah's Illinois Corporation's motion to dismiss Count III of plaintiff Peggy Watters' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court grants defendant's motion.

### I. BACKGROUND

The complaint alleges the following facts which, for the purposes of ruling on this motion, are taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). On July 6, 1996, plaintiff Peggy Watters ("Watters") was working as a crew member for the *Southern Star*, a vessel owned, operated, and maintained by defendant Harrah's Illinois Corporation ("Harrah's"). While working on the boat on that day, Watters sustained injuries to her back and body.

On January 5, 1998, Watters filed a three-count complaint in this court. Count I is a claim for personal injury under the Jones Act, 46 U.S.C.App. § 688. Count II is a claim under general maritime law for unseaworthiness. Count III is a claim under general maritime law for maintenance and cure. Among other remedies, Count III seeks an award of "$100,000.00 for [Harrah's] arbi-trary and capricious refusal to pay maintenance and cure."

In response to Watters' complaint, Harrah's filed an answer to Counts I and II and a motion to dismiss Count III. Harrah's motion to dismiss Count III is premised on Harrah's argument that a plaintiff should not be allowed to recover punitive damages in a maintenance and cure action.

### II. DISCUSSION

#### A. Standard for deciding a Rule 12(b)(6) motion to dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport*, 699 F.Supp. 1283, 1285 (N.D.Ill.1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. See FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

#### B. Punitive damages in a maintenance and cure action

The precise issue before the court is whether a plaintiff who sues a private party under general maritime law for willful failure to pay maintenance and cure can recover punitive damages. Neither the Supreme Court nor the Seventh Circuit has ever directly addressed this issue. Similarly, the parties did not cite and the court could not find a case from the Northern District of Illinois which directly addresses this issue. Thus, this is a case of first impression in this district.

Although there exists no precedent binding on this court, there are several sources which provide guidance in deciding the issue. First, there are three Supreme Court cases

which are particularly relevant to this court's decision. In addition, there are cases in other circuits which directly address the issue. The court will address these cases after a brief discussion on maintenance and cure liability in general.

### 1. Maintenance and cure liability

█ Under general maritime law, when a seaman becomes ill or injured during the period of his service, the shipowner is liable to the seaman for maintenance and cure. *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). "Maintenance" is "the payment by a shipowner to a seaman for the seaman's food or lodging expenses incurred while he is ashore as a result of illness or accident." *Barnes v. Andover Co.*, 900 F.2d 630, 631 (3d Cir.1990). "Cure" is "the right to necessary medical services." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir.1995) (en banc).

█ The liability for maintenance and cure "extends during the period when [the seaman] is incapacitated until he reaches the maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). This liability is not predicated on the fault or negligence of the shipowner; rather, it is an incident of the marine employer-employee relationship. *Aguilar*, 318 U.S. at 730. The rationale for imposing such liability was summarized in *Calmar S.S. Corp. v. Taylor* as follows:

> The reasons underlying the rule, to which reference must be made in defining it, are those enumerated in the classic passage by Mr. Justice Story in *Harden v. Gordon*, C.C., Fed.Cas.No. 6047: The protection of seamen, who, as a class, are poor, friendless and improvident from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for commercial service and maritime defense of the nation by inducing men to accept employment in arduous and perilous service.

*Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938).

### 2. Relevant Supreme Court decisions

The essential starting point in analyzing the issue of whether punitive damages are recoverable in a maintenance and cure action is an examination of relevant Supreme Court decisions. There are three, *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932), *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), and *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), which affect this court's ultimate decision. The court addresses each of these cases in turn.

#### a. *Cortes v. Baltimore Insular Line, Inc.*

The first Supreme Court decision pertinent to this court's discussion is *Cortes v. Baltimore Insular Line, Inc.* The *Cortes* opinion is important because it establishes that there are two distinct types of maintenance and cure actions: a tort-like type and a contract-like type. For the sake of clarity, the court will discuss *Cortes* in two parts. The first part discusses the opinion itself, while the second part summarizes the impact of *Cortes* on this court's decision.

#### 1. The *Cortes* opinion

In *Cortes*, the plaintiff was the administrator of the estate of seaman who had died of pneumonia. *Cortes*, 287 U.S. at 370. The seaman had contracted pneumonia while working aboard the defendant's ship. *Id.* The plaintiff sued the defendant to recover damages for the seaman's death, which the plaintiff alleged was caused by the failure of the master of the ship to give the seaman proper care. *Id.* The district court entered judgment in favor of the plaintiff. *Id.* The Second Circuit reversed, holding that the seaman's cause of action for negligent care or cure was ended by his death and did not accrue to the administrator. *Id.*

The Supreme Court was faced with the issue of whether a seaman's cause of action for personal injury which was caused or aggravated by the shipowner's failure to provide maintenance and cure survives the sea-

man's death. *Id.* at 371. The Court began by explaining that the only way that the cause of action survived the seaman's death was if a statute continued it or gave it to another. *Id.* The Court noted that the Jones Act "gives a cause of action to the seaman who has suffered personal injury through the negligence of his employer." *Id.* at 372. Further, the Court explained, if death resulted from such injury, the Jones Act also gives a cause of action to the seaman's personal representative. *Id.* Thus, the narrow issue before the Court was whether "the negligent omission to furnish care or cure is death from personal injury within the meaning of the statute." *Id.*

In an opinion written by Justice Cardozo, the Court held that a seaman does have a cause of action under the Jones Act where the seaman's injury was caused by the shipowner's negligent failure to pay maintenance and cure. *Id.* at 374–76. The Court further held that if death results from such injury, the Jones Act provides a cause of action to the seaman's personal representative. *Id.* at 376. The Court provided the following reasons for this holding:

> The failure to provide maintenance and cure may be a personal injury or something else according to the consequences. If the seaman has been able to procure his maintenance and cure out of his own or his friends' money, his remedy is for the outlay, but personal injury there is none. If the default of the vessel and its officers has impaired his bodily or mental health, the damage to mind or body is none the less a personal injury because he may be free at his election to plead it in a different count.... While the seaman was still alive, his cause of action may have overlapped his cause of action for breach of the maritime duty of maintenance and cure, just as it may have overlapped his cause of action for injury caused through an unseaworthy ship.... In such circumstances it was his privilege, in so far as the causes of action covered the same ground, to sue indifferently on any one of them.

*Id.* at 374–75 (internal citations omitted).

### 2. The impact of *Cortes*

The *Cortes* Court indicated that there are actually two different types of maintenance

and cure actions: a tort-like type and a contract-like type. *See Guevara,* 59 F.3d at 1511. The tort-like type involves personal injury which is caused or aggravated by the shipowner's failure to pay maintenance or cure. *Id.* When the seaman suffers personal injury from such failure to provide maintenance or cure, the seaman can recover for that injury either under general maritime law in a maintenance and cure action or under the Jones Act. *Id.* In fact, such actions are frequently brought under the Jones Act. *Id.* at 1512 (citations omitted); *see also Barnes,* 900 F.2d at 634 ("The Jones Act also has been held to provide an action for a seaman against the shipowner for negligence in failing to provide maintenance and cure.").

In contrast to the tort-like type of maintenance and cure action, the contract-like type involves monetary outlay and not personal injury. *Id.* In such a case, the seaman does not have a cause of action under the Jones Act. *Id.* His only cause of action is under general maritime law for failure to pay maintenance and cure. *Id.*

### b. *Vaughan v. Atkinson*

The second Supreme Court decision pertinent to this court's discussion is *Vaughan v. Atkinson.* *Vaughan* is important to this Court's opinion because it discusses the recovery of attorney's fees in a maintenance and cure action. The court's discussion of *Vaughan* will be in two parts, with part one discussing the opinion itself and part two discussing the impact of *Vaughan* on this court's decision.

### 1. The *Vaughan* opinion

In *Vaughan,* the plaintiff seaman brought a suit to recover maintenance and cure and for damages for failure to pay maintenance and cure. *Vaughan,* 369 U.S. at 527–28. The Court held that the defendant's deliberate failure to pay maintenance and cure gave rise to a claim for attorney's fees as well as general damages. *Id.* at 528–31. The *Vaughan* Court did not address the issue of punitive damages because plaintiff made no claim for punitive damages. *See Hines v.*

*J.A. LaPorte, Inc.*, 820 F.2d 1187, 1189 (11th Cir.1987) (per curiam).

## 2. The impact of *Vaughan*

*Vaughan* clearly stands for the proposition that attorney's fees are recoverable in a maintenance and cure action where the shipowner's failure to pay maintenance and cure was willful and recalcitrant. However, while that much is clear, what is not so clear is whether *Vaughan* stands for the broader proposition that both attorney's fees and punitive damages are recoverable in such a case.

This lack of clarity is due to the language that the Court used in explaining why the plaintiff was entitled to recover his attorney's fees. In one sentence, the Court describes the defendant's failure to pay maintenance and cure as "callous," "recalcitrant," and "willful and persistent." *Vaughan*, 369 U.S. at 530–31. This language has led some to believe that *Vaughan* supports the award of punitive damages in maintenance and cure cases. *See* GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY § 6–13 (2d ed.1975). In other sentences of the opinion, however, the Court explains that failure to pay maintenance and cure may entitle a seaman to recover "necessary expenses"; notes that the plaintiff "was forced to hire a lawyer and go to court to get what was plainly owed him"; and states that "[i]t is difficult to imagine a clearer cases of damages suffered for failure to pay maintenance." *Vaughan*, 369 U.S. at 530–31. This language has led others to believe that *Vaughan* only supports the award attorney's fees as an item of compensatory damages. *See* MOORE'S FEDERAL PRACTICE ¶ 54.78[3] (2d ed.1994).

Having noted the lack of clarity, however, this court agrees with the Fifth Circuit that the court "need not definitely resolve whether *Vaughan* awarded attorney's fees as an item of compensatory or punitive damages." *Guevara*, 59 F.3d at 1503. As the Fifth Circuit so aptly stated:

> The award clearly has a "make-whole" compensatory aspect and, based upon the facts of *Vaughan*, the award also has a punitive aspect to the extent that it punished an abuse of the litigation process. . . .

> The *Vaughan* award was clearly **not** a punitive damages award in the tort sense of punishing the underlying conduct that gave rise to the litigation, and the developing case law does not support such a position. . . . Simply put, all we can confidently say about *Vaughan* is that it entitles an injured seaman to recover attorney's fees—perhaps as part of compensatory damages—when his employer willfully fails to pay maintenance and cure. We cannot definitively conclude, however, that *Vaughan* establishes any broader principle to support [a] rule that tort-like punitive damages, not limited to attorney's fees, are available in cases of willful nonpayment of maintenance and cure.

*Id.* at 1503 (emphasis in original) (internal citations omitted).

### c. *Miles v. Apex Marine Corp.*

The third Supreme Court decision pertinent to this court's discussion is the case of *Miles v. Apex Marine Corp. Miles* is factually distinguishable from the case currently before the court. However, *Miles* is extremely important because it provides the framework for the court's approach in deciding damages issues in general maritime actions. *See Guevara*, 59 F.3d at 1506.

For the sake of clarity, the court's discussion of *Miles* will be in two parts. The first part will discuss the opinion itself. The second part will explain the impact of *Miles* by analyzing the logic and applicability of *Miles* as well as by outlining the framework that *Miles* established for deciding damages issues in general maritime actions.

### 1. The *Miles* opinion

In *Miles*, the plaintiff was the mother of, and administratrix of the estate of, a deceased seaman who was stabbed to death aboard the vessel *M/V Archon. Miles*, 498 U.S. at 21. The plaintiff brought suit against various defendants, alleging violations of general maritime law and the Jones Act. *Id.* at 22. The mother sought compensation for loss of support and services and for loss of society, punitive damages, and compensation to the estate for pain and suffering and lost future income. *Id.* The two issues before the

Court were (1) whether a non-dependent parent could recover for loss of society in a general maritime wrongful death action and (2) whether the general maritime law permits a survival action for the decedent's lost future earnings. *Id.*

Before addressing these two issues, the Court discussed at length the case of *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In *Moragne,* the Court created a general maritime wrongful death cause of action. *Id.* 498 U.S. at 27. The Court believed that the creation of such a cause of action was necessary for two reasons: (1) to be consistent with the policy of the Jones Act and the Death on the High Seas Act ("DOSHA") and (2) to effectuate " 'the constitutionally based principle that federal admiralty law should be "a system of law coextensive with, and operating uniformly in, the whole country." ' " *Id.* (citing *Moragne,* 398 U.S. at 402 (quoting *The Lottawanna,* 21 Wall. 558, 575, 22 L.Ed. 654 (1874))).

The *Miles* Court explained that it discussed the *Moragne* decision at length because it "exemplifies the fundamental principles that guide our decision in this case." *Miles,* 498 U.S. at 27. The Court elaborated as follows:

> We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, admiralty courts should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.

*Id.* at 27. The Court noted, however, that the *Moragne* decision "did not set forth the scope of damages recoverable under the maritime wrongful death action." *Id.* at 30. Thus, the Court was required to look to the two relevant federal statutes, DOSHA and the Jones Act, in order to decide the two issues before it.

The Court dealt first with the issue of whether a non-dependent parent could recover for loss of society in a general maritime wrongful death action. Looking to DOSHA, the Court determined that DOSHA by its terms limits recoverable damages in wrongful death suits to "pecuniary loss sustained by the persons for whose benefit the suit is brought." *Id.* (citing 46 U.S.C.App. § 762). The Court then held that "[t]his explicit limitation forecloses recovery for non-pecuniary loss, such as loss of society, in a general maritime action." *Id.* at 31.

The Court then examined whether such recovery was permitted under the Jones Act. The Court noted that, unlike DOSHA, the Jones Act did not preclude such recovery by its terms. *Id.* at 32. However, Congress incorporated the Federal Employers' Liability Act unaltered into the Jones Act. *Id.* At the time of such incorporation, the well-established rule was that FELA damages were limited to pecuniary damages. *Id.* The Court concluded that by "[i]ncorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." *Id.* The Court thus determined that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." *Id.*

The fact that the Jones Act precluded recovery, however, was not dispositive because the claim before the court was based on general maritime law and not on the Jones Act. *Id.* Looking at the facts of the case, however, the court determined that the factual claim alleged was that the decedent had been killed as a result of the unseaworthiness of the vessel. *Id.* The Court determined that the Jones Act would apply to such a claim. *Id.* The Court then held that because the Jones Act would apply to plaintiff's claim and the Jones Act would not allow recovery for loss of society, the plaintiff was not entitled to recover for loss of society even though the plaintiff's claim was actually under general maritime law. The Court explained that "[i]t would be inconsistent with our place in the

constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id.* at 32–33.

In sum, the Court held that a non-dependent parent could not recover for loss of society in a general maritime action because neither DOSHA nor the Jones Act permitted such recovery. This was true even though the plaintiff brought her claim under general maritime law. The rationale underlying the Court's holding was that maritime law must be uniform. As the Court explained: "Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOSHA, the Jones Act, or general maritime law." *Id.* at 33.

The Court then addressed the second issue before it, *i.e.*, the issue of whether general maritime law permits a survival action for the decedent's lost future earnings. The Court determined that it must look to the Jones Act for guidance because the case involved the death of a seaman. *Id.* at 36. The Court found that the Jones Act/FELA survival provision limits recovery to losses suffered during the decedent's lifetime; thus, the decedent's estate could not recover for lost future earnings under the Jones Act. *Id.* The Court then held that because the decedent's estate could not recover lost future earnings under the Jones Act, it could not do so under general maritime law. The Court explained:

> [Through the relevant provisions of the Jones Act], Congress has limited the survival right for seaman's injuries resulting from negligence. As with loss of society in wrongful death actions, this forecloses more expansive remedies in general maritime action founded on strict liability. We will not create, under our admiralty powers, a remedy that it disfavored by a clear majority of States and that goes well beyond the limits of Congress' ordered system of recovery for seaman's injury and death.

*Id.*

### 2. The impact of *Miles*

The general principle announced in *Miles* is often referred to as the *Miles* uniformity principle. *See, e.g., Guevara*, 59 F.3d at 1506. The principle is that federal maritime law should be uniform in that the rules applicable to a certain factual setting should be uniform, whether the case is brought under the Jones Act, DOSHA, or general maritime law. *See Miles*, 498 U.S. at 33. Pursuant to the *Miles* uniformity principle, a judicially created cause of action should not afford a greater remedy than one provided for by statute in a particular factual setting.

Although *Miles'* factual setting involved the wrongful death of a seaman, the *Miles* uniformity principle applies to cases involving personal injury of a seaman because the Jones Act applies to "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 U.S.C.App. § 688; *see also Guevara*, 59 F.3d at 1506. Thus, many courts have found that the *Miles* uniformity principle precluded particular types of damages, including punitive damages, in personal injury actions. *See, e.g., Guevara*, 59 F.3d at 1507 (citations omitted); *Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 203 (1st Cir.1994); *Smith v. Trinidad Corp.*, 992 F.2d 996 (9th Cir.1993) (per curiam); *Hunter v. Seabulk Offshore, Ltd.*, 993 F.Supp. 973 (E.D.La. 1998); *Boyd v. Cinmar of Gloucester*, 919 F.Supp. 208 (E.D.Va.1996); *Hollinger v. Kirby Tankships, Inc.*, 910 F.Supp. 571 (S.D.Ala. 1996); *Earhart v. Chevron U.S.A., Inc.*, 852 F.Supp. 515, 516 (E.D.La.1993).

A key aspect of *Miles* is the framework that the case provides to analyze a damages issue under general maritime law. To determine whether a particular type of damages is recoverable in a case under general maritime law, the court must "evaluate *the factual setting of the case* and determine what statutory remedial measures, if any, apply in that context." *Guevara*, 59 F.3d at 1506 (emphasis in original). *"If the situation is covered by a statute like the Jones Act or DOSHA,* and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well." *Id.* (emphasis in original).

By adhering to this framework, the court will be certain not to afford a broader remedy in a judicially created cause of action than in one provided for by statute. Thus, the court will adhere to and further the *Miles* uniformity principle.

### d. Summary of *Cortes, Vaughan,* and *Miles*

■ Having examined these three relevant Supreme Court decisions, this court makes the following conclusions. First, there is no Supreme Court precedent which addresses the issue of whether punitive damages are recoverable in a maintenance and cure action. *Vaughan* provides that an injured seaman is entitled to recover attorney's fees when his employer willfully and without reason fails to pay maintenance and cure. *Vaughan,* however, does not hold that punitive damages are available in such a case.

■ Second, it is clear from the Supreme Court's decision in *Cortes* that there are actually two types of maintenance and cure actions. The first type, the tort-like type, involves personal injury and overlaps with the seaman's cause of action for personal injury under the Jones Act. The second type, the contract-like type, involves only monetary outlay and does not have a statutory overlap; rather, the seaman's only cause of action is under general maritime law.

■ Finally, *Miles* provides the analytical framework for deciding a damages issue under general maritime law. Pursuant to *Miles,* the court must first decide if there are any statutory remedies that apply to the factual setting of the case. If there are, the plaintiff may only recover what the plaintiff could have recovered under the applicable statute. By using this framework, the court will make sure that the court's decision does not violate the *Miles* uniformity principle.

### 3. The Fifth Circuit's decision in *Guevara v. Maritime Overseas Corp.*

In *Guevara,* the Fifth Circuit addressed the precise issue before the court. In a well-reasoned and analytically sound opinion, the Fifth Circuit determined that punitive damages are not recoverable in an action under general maritime law for willful failure to pay maintenance and cure. *Guevara,* 59 F.3d at 1510–13. Because this court's determination on this issue is greatly influenced by the *Guevara* decision, the court will discuss the *Guevara* opinion at length.

In *Guevara,* the plaintiff was injured on May 29, 1990 while working as a crew member on the vessel *Overseas Philadelphia. Id.* at 1498. The plaintiff made a number of formal demands on the defendant (the owner of the vessel) for maintenance and cure. *Id.* at 1499. The defendant, however, did not pay the plaintiff immediately. Rather, the defendant made its first maintenance and cure payment on June 24, 1991 at the earliest and did not make the final payment until December 29, 1991. *Id.*

In response to his injury, the plaintiff sued the defendant, alleging negligence under the Jones Act, unseaworthiness under general maritime law, and willful failure to pay maintenance and cure on a timely basis under general maritime law. *Id.* A jury awarded the plaintiff $131,000 in compensatory damages and $60,000 in punitive damages for the defendant's "arbitrary and capricious" failure to pay maintenance and cure. *Id.*

A panel of the Fifth Circuit affirmed the jury's award of punitive damages. *Guevara v. Maritime Overseas Corp.,* 34 F.3d 1279, 1284 (5th Cir.1994). The panel explained that the current law of the Fifth Circuit was that a shipowner who fails to pay maintenance and cure may be liable for punitive damages and attorney's fees "[i]f the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight." *Id.* at 1282 (citing *Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987)). The panel noted that the Supreme Court's decision in *Miles* was relevant to the determination of whether punitive damages were recoverable in a case of willful failure to pay maintenance and cure. *Id.* at 1283–84. However, the panel determined that the "implications of *Miles* " were "not so direct as to allow this panel to depart from the Court's previous decisions that punitive damages are available in maintenance and cure cases." *Id.* at 1284.

The Fifth Circuit then reheard the case en banc to reconsider the issue of whether punitive damages are available in maintenance and cure actions. *Guevara*, 59 F.3d at 1498–99. Applying the *Miles* framework, the Fifth Circuit held that punitive damages are not recoverable in an action under general maritime law for willful failure to pay maintenance and cure. *Id.* at 1513.

The Fifth Circuit identified the issue before it as whether " 'the factual setting of the case' or the 'situation' is one covered by a statute like the Jones Act or DOSHA." *Id.* at 1510. The court recognized that many courts have determined that a maintenance and cure action is a general maritime action which is not covered by statute and, thus, is not subject to the *Miles* uniformity principle. *Id.* (citing *Anderson v. Texaco, Inc.*, 797 F.Supp. 531, 536 (E.D.La.1992); *Breshears v. River Marine Contractors, Inc.*, No. 92–1850, 1992 WL 245656, at *2 (E.D.La. Sept.10, 1992); *Howard v. Atlantic Pacific Marine Corp.*, No. 89–3073, 1992 WL 55487, at *2 (E.D.La. Feb.28, 1992); *Ridenour v. Holland Am. Line Westours, Inc.*, 806 F.Supp. 910, 911 (W.D.Wash.1992)); *see also Glynn v. Roy Al Boat Management Corp.*, 57 F.3d 1495, 1503 (9th Cir.1995); *White v. American River Transp. Co.*, 853 F.Supp. 300, 301 (S.D.Ill.1993).

The Fifth Circuit, however, disagreed with the other courts' determination that a maintenance and cure action "has no analog in the existing statutory scheme." *Id.* at 1511. The Fifth Circuit, relying on Justice Cordozo's opinion in *Cortes*, explained that there are two types of maintenance and cure actions: a tort-like type and a contract-like type. *Id.* The court explained that the tort-like type of maintenance and cure action involves personal injury, which is usually the "worsening of the seaman's physical or mental health caused by the failure to provide maintenance or, more likely, cure." *Id.* The court further explained that the contract-like type of maintenance and cure action need only involve the loss of monetary outlay and not physical injury. *Id.*

Addressing the tort-like type of maintenance and cure action first, the Fifth Circuit determined that punitive damages are not recoverable in such an action. *Id.* at 1512. The court explained:

> Because the tort-like maintenance and cure action involves personal injury, . . . it overlaps with the personal injury coverage of the Jones Act. Such an action is frequently brought under the Jones Act. . . . As mentioned, once there is a statutory/general maritime law overlap in the factual circumstances that are covered, the *Miles* damages uniformity principle is invoked, and punitive damages would be precluded under the general maritime action for maintenance and cure.

*Id.* at 1511–12 (internal citations omitted); *see Cortes*, 287 U.S. at 374–75 ("While the seaman was still alive, his cause of action for personal injury created by [the Jones Act] may have overlapped his cause of action for breach of the maritime duty of maintenance and cure. . . .").

The Fifth Circuit then addressed the contract-like type of maintenance and cure action. *Id.* at 1512. The court explained that in a case where a contract-like type of maintenance and cure action does not involve personal injury, "there is no statutory overlap to invoke the *Miles* uniformity principle." *Id.* In such a case, the court determined, "the general maritime law is not directly constrained by statute." *Id.* Having recognized that much, the Fifth Circuit then stated:

> Nevertheless, for several reasons, we believe that punitive damages should not be available in *any* action for maintenance and cure, even in those contract-like actions that can only be brought under the general maritime law.

*Id.* (emphasis in original).

The Fifth Circuit then gave four reasons as to why punitive damages should not be allowed in any maintenance and cure action. The first reason was that it seemed peculiar to deny punitive damages to a seaman who suffers personal injury but to allow the possibility of recovery to a seaman who suffers only monetary loss. *Id.* at 1513. The second reason was that court should attempt to harmonize the rules that it develops under general maritime law with congressional enactments and that punitive damages are not

available under related legislative schemes. *Id.* The third reason was that it made "little sense to create a fragmentation of admiralty law" by allowing punitive damages in a contract-like type of maintenance and cure action but not in a tort-like type. *Id.* The fourth reason was that because punitive damages are generally unavailable for breach of contract, "to the limited extent that the obligation to pay maintenance and cure is contractual in nature, allowing punitive damages for breach thereof is anomalous." *Id.*

In sum the Fifth Circuit held that the *Miles* uniformity principle bars the recovery of punitive damages in any type of maintenance and cure action. *Id.* at 1513. The Fifth Circuit further held that attorney's fees are recoverable in maintenance and cure actions where the proper showing of fault is shown. *Id.* To the extent that its holding contradicted earlier decisions by the Fifth Circuit, specifically *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110 (5th Cir.1984), and *Dyer v. Merry Shipping Co.*, 650 F.2d 622 (5th Cir.1981), the Fifth Circuit explicitly stated that those earlier cases were overruled. *Id.*

### 4. Other lower court decisions addressing punitive damages in maintenance and cure actions

In addition to the Fifth Circuit, other lower courts have held that punitive damages are not recoverable in maintenance and cure actions. *See, e.g., Glynn*, 57 F.3d at 1505; *Boyd*, 919 F.Supp. at 211; *Hollinger*, 910 F.Supp. at 573 (explicitly adopting the Fifth Circuit's reasoning in *Guevara*); *Carolina Clipper, Inc. v. Axe*, 902 F.Supp. 680, 684 (E.D.Va.1995); *cf. Kraljic v. Berman Enters., Inc.*, 575 F.2d 412, 415–16 (2d Cir.1978) (holding that attorney's fees are the only type of punitive damages recoverable in such actions). Some of these courts' holdings were based on the rationale that the *Miles* uniformity principle bars the recovery of punitive damages in such cases. *See, e.g., Boyd*, 919 F.Supp. at 211; *Hollinger*, 910 F.Supp. at 572. Other of these courts' holding were based on the rationale that *Vaughan's* provision for attorney's fees in maintenance and cure cases is sufficient to deter willful and capricious nonpayment of maintenance and cure. *See, e.g., Glynn*, 57 F.3d at 1505.

Other lower courts, however, have held that punitive damages are recoverable in a maintenance and cure action. *See, e.g., Hines*, 820 F.2d at 1189; *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1051 (1st Cir. 1973); *White*, 853 F.Supp. at 301; *Musielak v. Rowan Int'l, Inc.*, 814 F.Supp. 556, 557 (S.D.Tex.1993); *Anderson*, 797 F.Supp. at 536; *Hoeffling v. U.S. Steel, Great Lakes Fleet, Inc.*, 792 F.Supp. 1029, 1030 (E.D.Mich.1991). Several of these decisions, including the First Circuit's decision in *Pocahontas* and the Eleventh Circuit's decision in *Hines*, were decided before the Supreme Court's decision in *Miles*. Other of these decisions found that the *Miles* uniformity principle did not bar punitive damages in maintenance and cure actions because a maintenance and cure action has no statutory analog. *See, e.g., White*, 853 F.Supp. at 301; *Anderson*, 797 F.Supp. at 536. Yet other of these decisions simply stated that punitive damages are recoverable in such a case without analyzing the implications of *Miles* but by simply citing previous Fifth Circuit decisions which since have been overruled by *Guevara. See, e.g., Musielak*, 814 F.Supp. at 557; *Hoeffling*, 792 F.Supp. at 1030.

### 5. This court's decision

■ Having analyzed the above cited cases, this court finds that the correct approach to this issue is the approach of the Fifth Circuit as explained in the case of *Guevara. Cortes* teaches that there are two separate types of maintenance and cure actions: a tort-like type and a contract-like type. The tort-like type of maintenance and cure action involves personal injury and, thus, overlaps with the personal injury coverage of the Jones Act. Once there is such an overlap, the *Miles* uniformity principle is invoked. Pursuant to the *Miles* uniformity principle, punitive damages are not recoverable in the tort-like maintenance and cure action because such damages would not be recoverable in an action under the Jones Act.

Further, punitive damages should not be recoverable in a contract-like maintenance

and cure action if they are not recoverable in a tort-like maintenance and cure action. This court agrees with the Fifth Circuit's reasoning as to why this is so. As mentioned, the Fifth Circuit's reasons were that allowing punitive damages in a contract-like type of maintenance and cure action but not in a tort-like type: (1) would create a fragmentation of general maritime law which is inconsistent with the uniformity principle of *Miles;* (2) would seem strange because it would allow one who has suffered no personal injury to recover punitive damages and yet preclude one who has suffered personal injury from recovering such damages; (3) would not be in harmony with related congressional enactments, *i.e.,* DOSHA and the Jones Act; and (4) would create an anomaly because punitive damages generally are not recoverable in contract actions. *Guevara,* 59 F.3d at 1513.

The court finds unpersuasive those cases cited by Watters in support of her argument that punitive damages should be recoverable in an action for willful and wanton failure to pay maintenance and cure. First, *Hines* and *Pocahontas* are unpersuasive as those cases were decided pre-*Miles* and, thus, did not consider the implications of the *Miles* uniformity principle. Second, the court disagrees with those cases, including *Anderson* and *White,* that have found that there is never a statutory analog to a maintenance and cure action. Finally, several of those cases were only brief opinions that simply stated that punitive damages are recoverable in such actions without actually analyzing the issue. *See White,* 853 F.Supp. at 301; *Musielak,* 814 F.Supp. at 557; *Hoeffling,* 792 F.Supp. at 1030.

Further, contrary to Watters' representation, the Sixth Circuit and the Fourth Circuit have never "held" that punitive damages are recoverable in a case such as this one. Watters cites *Hoeffling* as the Sixth Circuit case that held as much; however, *Hoeffling* was a decision from the Eastern District of Michigan, not the Sixth Circuit. *Hoeffling,* 792 F.Supp. at 1029. Watters cites *Manuel v. United States,* 50 F.3d 1253 (4th Cir.1995), as the Fourth Circuit case that "held" that punitive damages are recoverable in a maintenance and cure action. *Manuel,* however,

did not "hold" that punitive damages were recoverable in such an action. The issue in *Manuel* was whether the exclusivity provision of 46 U.S.C. §.745 precludes a seaman's claim for maintenance and cure against the private operator of a vessel owned by the United States; thus, *Manuel's* statement that "[c]ourts have long awarded punitive damages to seamen where maintenance and cure benefits have been arbitrarily and willfully denied" was merely dicta. *Manuel,* 50 F.3d at 1254–55. Watters did not cite nor did the court find any other Fourth or Sixth Circuit cases on point.

In sum, this court holds that punitive damages are not recoverable in a maintenance and cure action under general maritime law for willful and wanton failure to pay maintenance and cure. Pursuant to *Vaughan,* however, attorney's fees are recoverable in such a case.

### III. *CONCLUSION*

For the foregoing reasons, the court grants defendant's motion to dismiss Count III of plaintiff's complaint. Count III is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) insofar as that count attempts to state a claim for punitive damages. Plaintiff is given leave until April 27, 1998 to file an amended complaint consistent with this order. Defendant is given until May 4, 1998 to answer or otherwise plead to the amended complaint.